Angelo F. GRILLO, Plaintiff–
Appellant,

v.

NEW YORK CITY TRANSIT AUTHOR-
ITY, Nora Bassett, Individually and in
her Official Capacity, Elizabeth Soto,
Individually and in her Official Ca-
pacity, Bonnie Lee, Individually and
in her Official Capacity, Karl Miller,
Individually and in his Official Capac-
ity, City of New York, NYC Depart-
ment of City Wide Administrative
Services, Peter Ingoglia, Richard Wa-
chenheim, Defendants–Appellees.

Docket No. 01–7090.

United States Court of Appeals,
Second Circuit.

Argued Dec. 4, 2001.

Decided May 17, 2002.

law claims for lack of jurisdiction. *Id.* at 391–92.

Roya Moghadassi, Moghadassi & Associates, New York, NY, for Plaintiff–Appellant.

Richard Schoolman, Office of the General Counsel, New York City Transit Authority, Brooklyn, NY, for Defendants–Appellees.

Before WALKER, Chief Judge, NEWMAN and F.I. PARKER, Circuit Judges.

PER CURIAM.

Plaintiff-appellant Angelo F. Grillo appeals from the January 8, 2001 judgment of the United States District Court for the Eastern District of New York (Eugene H. Nickerson, *District Judge*) granting the motion of defendants-appellees, the New York City Transit Authority ("NYCTA") and several of its officers and employees (collectively, "appellees"), for summary judgment under Fed.R.Civ.P. 56 and dismissing Grillo's complaint.[1] *See Grillo v. New York City Transit Auth.*, 122 F.Supp.2d 385 (E.D.N.Y.2000). Grillo, a white male of Italian descent, brought claims under 42 U.S.C. §§ 2000e, 1981, 1983, and 1985, as well as several state law claims, alleging chiefly that he was improperly demoted from his probationary job because of racial, ethnic, and gender discrimination. *Id.* at 386. The district court found Grillo's federal racial and ethnic claims to be without merit, and dismissed his federal gender claim and state

## BACKGROUND

This appeal arises out of Grillo's demotion from a probationary position he held at the NYCTA. Grillo was demoted from his position as Maintenance Supervisor I shortly after his removal, for disruptive behavior, from a required two-week in-house training class for supervisors in June 1997. The class was taught by three minority females: appellees Nora Bassett and Bonnie Lee (African–Americans), and Elizabeth Soto (Hispanic). The parties give differing accounts of what happened at this class. In their depositions and affidavits, the instructors stated under oath that Grillo repeatedly disrupted the class. Grillo, on the other hand, principally claims that the instructors ignored similar behavior on the part of minorities and singled him out for punishment and humiliation because of his race and speech.

Two instances of alleged misconduct are especially noteworthy. Even after he had been warned, Grillo made comments to Bassett in which he disparaged the class material as "women's stuff" or as instructions to "act like women," and he once said something to the effect of "women who dress like that [like the women in the building where the class was being held] should expect to be grabbed and pulled on."

The other incident occurred on Friday of the first week of class (the "Friday class"), during a visit by Lawrence Miller, the Director of the NYCTA's Equal Employment Opportunity Office ("EEOO"), and another NYCTA officer. As the visitors were leaving, Grillo allegedly shouted out

1. This court initially disposed of this appeal by a summary order issued on March 25, 2002. On April 3, 2002, appellees' counsel moved for redesignation of the summary order to a publishable and generally citable opinion. We grant this motion by issuing the summary order, with minor changes, as a per curiam.

to Miller something like, "hey you, can I ask you a question," and then left the classroom in pursuit of Miller while Lee was addressing the class. Another NYC-TA official who was present at the Friday class, James Wilson, thought that Grillo's behavior was inappropriate and reported it to one of his superiors, Patricia O'Brien, who urged Bassett to report the conduct to Grillo's supervisor. After Grillo's behavior was reported to Eugene Cooper, who was substituting for Grillo's supervisor, Grillo was removed from the class during the lunch break.

Grillo's demotion followed shortly afterward. Grillo's supervisor, appellee Richard Wachenheim, conferred about Grillo's behavior with appellee Peter Ingoglia, a manager in the Office of Labor Relations. Ingoglia then requested an evaluation from Grillo's immediate supervisor, appellee Karl Miller. Miller's performance evaluation detailed numerous examples of Grillo's shortcomings as an electrician and supervisor and concluded that Grillo did not have "the skills, knowledge, or leadership required to be a maintenance supervisor." Grillo hotly contests the evaluation. After receiving this evaluation, Ingoglia demoted Grillo without a hearing, as he was authorized to do with a probationary employee.

## DISCUSSION

On appeal, Grillo claims that his demotion involved: (1) a violation of his due process rights under the Fourteenth Amendment; (2) selective treatment in violation of the Equal Protection Clause; (3) retaliation against him for exercising his First Amendment rights; (4) a conspiracy to deprive him of his constitutional rights in violation of § 1985(3); and (5) disparate treatment based on his race, giving rise to a cause of action under Title VII of the Civil Rights Act.

Reviewing the district court's grant of summary judgment *de novo*, *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 118 (2d Cir.2001), we affirm on the basis that Grillo has failed to bring forward evidence sufficient for a reasonable jury to find in his favor on any of his claims.

### I. The Due Process Claim

In his due process claim, Grillo contends that his liberty interests were violated by the NYCTA's failure to provide him with a name-clearing hearing to rebut the charges of incompetence and misbehavior made in connection with his demotion. We disagree. This court has "held on numerous occasions" that where, as here, a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, "an Article 78 proceeding is a perfectly adequate postdeprivation remedy." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880–81 (2d Cir.1996). Grillo has not provided an adequate explanation for his failure to avail himself of the name-clearing hearing offered by an Article 78 hearing.

### II. The Discrimination Claims

In order to survive a motion for summary judgment on his Title VII, equal protection, and § 1985(3) conspiracy claims, Grillo must come forward with at least some credible evidence that the actions of the individual appellees were motivated by racial animus or ill-will. *See Stern v. Trs. of Columbia Univ. in the City of New York*, 131 F.3d 305, 312 (2d Cir.1997) (Title VII); *Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir.1996) (equal protection); *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam) (conspiracy claim under § 1985(3)). In support of his discrimination claims, Grillo chiefly argues (1)

that the instructors subjected Grillo to disparate and unequal treatment, and conspired to deprive him of equal protection under the laws, by singling him out for punishment because of his race and speech, and (2) that appellees Wachenheim, Ingoglia, and Miller acted out of ill-will to deprive Grillo of equal protection of the laws by fabricating allegations of ineptitude to support his demotion.

After carefully reviewing the record, we agree with the district court's conclusion that Grillo has failed to produce sufficient evidence to withstand summary judgment on his discrimination claims. *See Grillo*, 122 F.Supp.2d at 391–92. Even if Grillo's highly dubious claim that he was unfairly singled out for punishment by the instructors is credited, Grillo has "done little more than cite to [his alleged] mistreatment and ask the court to conclude that it must have been related to [his] race. This is not sufficient." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir.2001); *see also Crowley*, 76 F.3d at 53 (stating that evidence of differential treatment without more is insufficient to establish malice or bad faith in a selective treatment claim). Given the absence of evidence of racial animus on the part of the instructors, there is no merit to Grillo's claim at oral argument that the instructors' bias, by distorting their reports about Grillo's behavior, tainted the decisions of Wachenheim and Ingoglia. Similarly, even if Ingoglia and Miller may have "exaggerated or lied about [Grillo's poor performance], the record does not support a finding that they did so to mask" any prohibited state of mind. *Lizardo*, 270 F.3d at 104. To the contrary, we agree with the district court that Grillo's behavior at the Friday class "was, to say the least, inappropriate" and a legitimate non-discriminatory reason for his demotion. *Grillo*, 122 F.Supp.2d at 391.

### III. The First Amendment Claims

We are also unpersuaded by Grillo's First Amendment claim that the instructors retaliated against him by punishing and censoring him when he sought to raise issues of public concern. In this vein, Grillo argues that his comment about grabbing and pulling women was intended to spark debate about sexual harassment policy, that his comment that certain management techniques were "women's stuff" was an expression of his disagreement with his employer, and that his abrupt exit from the class in pursuit of Lawrence Miller was an expression of his right to complain about management by learning how to file a complaint with the EEOO.

Even if we credit Grillo's highly implausible characterizations of his statements, his claims still fail. To be protected, the speech of a public employee like Grillo generally (1) must have been made as a citizen on matters of public concern rather than as an employee on matters of personal interest, *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and (2) the employee's interest in expressing himself must not be outweighed by any injury to the employer in the provision of the services it offers though its employees, *Jeffries v. Harleston*, 52 F.3d 9, 12 (2d Cir.1995). A court can determine the protected status of speech as a matter of law. *Connick*, 461 U.S. at 148 n. 7, 103 S.Ct. 1684.

Here, Grillo's speech was not protected because it either was not on a matter of public concern or, if it was, his employer was justified in restricting it. With regard to Grillo's efforts to speak to Lawrence Miller and his objections to the unmanliness of certain management techniques, there is no evidence that these statements were uttered for any other reason than to protect Grillo's own rights or

to air his personal grievances. *See Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143–44 (2d Cir.1993). A somewhat closer question is presented by Grillo's grabbing-and-pulling comment because it could be seen as an effort, even if a crude one, to provoke debate about sexual harassment policy and hence matters of public concern. *See id.* at 143. However, even if this comment raised matters of public concern, Grillo's employer was justified in restricting his speech given the mildness of the sanction (a rebuke), the comment's tenuous connection to matters of public concern, and its significant potential for disruption. *See Jeffries*, 52 F.3d at 13. In addition to its obvious provocativeness, we note that this statement advocated to future NYCTA supervisors behavior that could have subjected them and their employer to liability for violating various laws.

## CONCLUSION

The judgment of the district court is affirmed.