**R–GOSHEN LLC, Plaintiff,**

v.

**VILLAGE OF GOSHEN, Marcia Mattheus, Welson A. Abt, Jerome O'Donnell, Elaine McClung, Roger A. Pikul, Reynell Andrews, George Urbanick, Baxter's Pharmacy and John Nemeth, Defendants.**

No. 02 CIV.4302(CM).

United States District Court,
S.D. New York.

Oct. 29, 2003.

Robert D. Trotta, Davis & Trotta, Millerton, Richard D. Malmed, Richard D. Malmed, Esq., Philadelphia, PA, for R–Goshen, LLC, plaintiff.

James M. Skelly, Fixler & Associates, L.L.P., Elmsford, NY, Robert D. Trotta, Davis & Trotta, Millerton, NY, Braden H. Farber, Milber Makris Plousadis & Seiden LLP, Garden City, NY, Richard Golden, Burke, Miele & Golden LLP, Goshen, NY, for Village of Goshen, Marcia Matthews, Weldon A. Abt, Jerome O'Donnell, c/o Planning Board of the Village of Goshen, Elaine McClung, c/o Planning Board of the Village of Goshen, Roger A. Pikul, c/o Planning Board of the Village of Goshen, defendants.

## DECISION AND ORDER GRANTING THE REMAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT

MCMAHON, District Judge.

Plaintiff R. Goshen brings this action pursuant to the Federal Civil Rights Act, 28 U.S.C. § 1983 and § 1985 and the Sherman and Robinson Patman Acts, 15 U.S.C. §§ 1, 2, 3 and 15, against Defendants Village of Goshen, Marcia Mattheus, Welson A Abt, Jerome O'Donnell, Elaine McClung, Roger A. Pikul, Reynell Andrews, George Urbannick, Baxter's Pharmacy and John Nemeth. Plaintiff has moved for summary judgment on its § 1983 and § 1985 claims. Defendants have cross-moved for summary judgment dismissing the § 1983 and § 1985 claims.

Based on the following, Defendants' cross-motion is granted and Plaintiff's motion is denied.

## I. BACKGROUND

On July 16, 1998, Plaintiff R–Goshen LLC, a New York limited liability corporation, entered into an agreement to purchase property from WSH Realty Corp. ("WSH"), a corporation owned by Paul J. Healy, for the purpose of developing a free standing CVS Pharmacy ("CVS") store of approximately 9,100 square feet on the property. The lot, a 1.26 acre vacant piece of land on Greenwich Avenue in the Village of Goshen ("Goshen"), New York, is known as tax parcel no. 112–12–18, 8 & 18 (the "Greenwich Avenue Property"). Under the terms of the agreement, Plaintiff agreed to purchase the land for $525,000, subject to Plaintiff obtaining appropriate governmental approvals for the erection of the CVS Pharmacy building on the site.

Approximately one month earlier, in June 1998, Plaintiff had filed an application with Goshen for a building permit for the CVS store.

Because the Greenwich Avenue Property is located in the Goshen Architectural Design District ("ADD"), it is subject to Goshen's Zoning Laws pertaining to the ADD. Specifically, Section 15 of the Zoning Laws (the "ADD Ordinance"), provides for referral of building permit applications to an architectural consultant to determine whether the proposed application conforms to or conflicts with the ADD Ordinance. However, the Goshen Planning Board (the "Board") retains the final right of approval or disapproval over the application for any proposed project.

On August 13, 1998, Plaintiff presented the site plan and building design to the full Board. At the time of the application, the Board was comprised of Defendants Jerome O'Donnell, Elaine McClung, Roger A. Pikul, Reynell Andrews and George Urbannick.

On November 4, 1998, pursuant to the ADD Ordinance, the Board forwarded Plaintiff's application to Defendant Abt, Goshen's hired architectural design consultant for ADD reviews. Abt subsequently reviewed Plaintiff's application to determine its compliance with the ADD Ordinance.

On October 16, 1998, John Nemeth, the proprietor of Baxter's Pharmacy, the only drug store in the downtown Goshen area, wrote a letter to the Planning Board. In the letter, Mr. Nemeth stated to the Board that "since [the proposed CVS store] is located in the [ADD], a full SEQURA (sic) review must be completed" [Plaintiff's Exhibit K].

On November 12, 1998, Abt informed the Board that the application did not comply with the ADD Ordinance because the proposed building was set back too far from the street. Over two year earlier, WSH had applied for approval of the lot as an accessory use to Healey's Chevrolet, the automobile sales business on the adjacent parcel. On February 22, 1996, Abt approved Healy's application under ADD review without reference to any setback problem.

On January 29, 1998 and later, on September 28, 1998, Jeffrey Fildler, a representative of CVS, met with the Planning Board and stated that CVS could not agree to a lesser setback for the proposed store, and explained in detail the reasons why it could not [Johnson Aff. ¶ 14 Exhibit "D"].

On March 25, 1999, the Board voted on a positive declaration of significance and issued a Notice of Determination under the State Environmental Quality Review Act ("SEQRA") as a positive declaration determining that Plaintiff's proposed action may

have significant adverse effects on the environment.

In April 1999, Marcia Mattheus[1] was elected Mayor of Goshen. Sometime prior to her election, Ms. Mattheus was approached outside a Board meeting by John Joseph, a representative of Plaintiff, who told her that the Village should turn down Plaintiff's application so that Plaintiff could sue the Village [Joseph Aff.¶ 16 Exhibit E].

Around this time, Robert Trotta, Plaintiff's attorney, submitted a Memorandum of Law to the Planning Board, which asserted that, since the reliance on Mr. Abt's opinion was not properly based on any legal standard in the Zoning Code or the ADD Section, their actions were arbitrary and capricious. [Joseph Aff.¶ 20 Exhibit "G"].

Also around this time, in an unrelated matter, a Mr. and Mrs. Griffith initiated an Article 78 proceeding against the Planning Board, asserting that the ADD section of the Goshen Zoning Code, pursuant to which the Board had rendered a decision to deny Mr. and Mrs. Griffith certain building permits, was unconstitutional. Mr. and Mrs. Griffith argued that since the ADD section was unconstitutional, the Board had no standards on which to base its' decision, and therefore their actions in the matter were arbitrary and capricious. Thereafter, Mayor Mattheus and Stephen Reinke, counsel for the Planning Board, attended a settlement conference at which the Board agreed to issue the building permits.

On June 10, 1999, Katherine Raub Ridley, General Counsel of the Preservation League, confirmed that the ADD Ordinance provided the Board with authority to address the overall design, setback and siting of the proposed CVS project.

On June 22, 1999, the Board voted to require Plaintiff to prepare a Draft Environmental Impact Statement ("DEIS") concerning the 85 foot setback, the aesthetic aspect of the building, traffic and drainage.

In August 1999, Plaintiff entered into a lease with Brooks Drugs, Inc., a division of CVS, to build and lease to Brooks Drugs, Inc., a CVS Pharmacy retail store on the Greenwich Avenue Property. The lease was contingent on obtaining necessary governmental approvals and erecting the building in conformity with various additional requirements specified by CVS.

Goshen subsequently hired architect David Crawford to review the plans and redesign the proposed CVS store. Mr. Crawford submitted to Goshen revised designs for the project. The revised designs were sent to Abt for review and he recommended them for approval.

Shortly afterward, the Board conditionally approved Plaintiff's building application based upon these revised designs.

Plaintiff rejected the revised plan and outlined its objections at a Board meeting. Plaintiff's main objection was that the revised design lacked adequate parking space.

In September 2001, CVS terminated its agreement with Plaintiff and entered into a lease for another site within Goshen. The Board conditioned approval of the alternative site on CVS's willingness to withdraw its application for the Greenwich Avenue Property site.

## II. THE COMPLAINT AND THE INSTANT MOTIONS

R–Goshen filed the instant complaint on June 7, 2002. Named as Defendants were the Village of Goshen, Marcia "Matthews,"

---

1. Plaintiff's complaint incorrectly names Marcia Mattheus as "Marcia Matthews."

Weldon Abt, the members of Goshen's Planning Board, and Baxter's Pharmacy and its principal, John Nemeth. The complaint contains two counts. In the first, R–Goshen claims that all the Defendants violated Sections 1983 and 1985 of the Federal Civil Rights Act, in that they (1) deprived it of its Fourteenth Amendment rights to substantive and procedural due process, and (2) took its property without just compensation in violation of the Fourth and Fifth Amendments. The second count alleges that Defendants "Matthews," Baxter's, Nemeth, and others unknown to the Plaintiff conspired to prevent Plaintiff from establishing his CVS in Goshen in violation of the Sherman and Robinson Patman Acts, 15 U.S.C. §§ 1, 2, 3 and 15. The latter claim has since been withdrawn, and, on May 16, 2003, Baxter's and Nemeth were voluntarily dismissed from the case.

The Plaintiff has moved for summary judgment on its constitutional claims. The various Defendants responded with cross-motions for summary judgment dismissing the First Count.

For the following reasons, the Defendants' cross-motions are granted and Plaintiff's motion is denied. The complaint is ordered dismissed.

### III. CONCLUSIONS OF LAW

**1. Plaintiff's Claims Against Defendant Abt are Dismissed**

■ It is well-settled that in order to maintain a claim under 42 U.S.C. § 1983, a party must first demonstrate two elements: (1) that the conduct complained of was committed by a person acting under color of law; and (2) that the conduct complained of deprived the complainant of rights, privileges, or immunities secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983; *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir.1997);

*Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994); *Burtnieks v. The City of New York*, 716 F.2d 982, 986 (2d Cir.1983). Perhaps most importantly, excluded from the reach of Section 1983 is private conduct "however discriminatory or wrongful." *Elmasri v. England*, 111 F.Supp.2d 212, 217 (E.D.N.Y.2000) (quoting *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948))).

■ Defendant Weldon Abt has moved for summary judgment on the ground that he is not a state actor. His motion is well-founded.

Abt served as a consultant. A consultant's professional opinions and the advice he offers to municipalities are not state action and thus cannot support claims against such consultants for liability under section 1983. *See Omnipoint Communications, Inc. v. Comi*, 233 F.Supp.2d 388, 395 (N.D.N.Y.2002) (where a consultant "merely provides professional advice, such advice cannot be considered state action for purposes of section 1983"); *Kirkland v. Rosen*, No. 91 Civ. 7609, 1992 WL 322013, at *3 (S.D.N.Y Oct. 28, 1992); *Goetz v. Windsor Central School District*, 593 F.Supp. 526, 528–529 (N.D.N.Y.1984) (the conduct of an attorney acting in his professional capacity in representing a municipal client does not constitute action under color of law for purposes of Section 1983).

In a strikingly analogous situation in *Omnipoint Communications, Inc.*, discussed *supra*, plaintiff Omnipoint Communications, Inc. ("Omnipoint") brought an action pursuant to, *inter alia*, 42 U.S.C. § 1983, against a consultant retained by a town to provide consultation on various telecommunications issues, including the preparation of a telecommunications tower

ordinance, the review and analysis of any applications for cellular towers and related facilities, and to advise the town with respect to a proposal by Omnipoint to lease town property for the construction of a cellular tower. Thereafter, the town enacted a local law which was based on a draft ordinance provided by the consultant under his consulting services agreement. Pursuant to local law, Omnipoint paid certain fees to the town, part of which were used to compensate the consultant for his consulting services. The consultant also reviewed the Omnipoint application and provided the town with his opinions and advice. Pursuant to a court approved agreement, the local law was eventually declared to be illegal by the town and Omnipoint filed a claim against the consultant, alleging, in part, a claim under Section 1983 for violations of the Telecommunications Act of 1996. The Court held that the consultant was not subject to liability under Section 1983 since his actions as a consultant to the town did not make him a state actor. *Omnipoint Communications, Inc.*, 233 F.Supp.2d at 395. The Court also noted that while the consultant "provided advice, it was ultimately the Town's decision to accept that advice." *Id.*

In *Goetz v. Windsor Central School District*, 593 F.Supp. 526 (N.D.N.Y.1984), the plaintiff alleged that the attorney for a school district caused him to be unlawfully terminated without a hearing even though the attorney knew or should have known that he had a right to a pre or post termination hearing. Additionally, the plaintiff alleged that the attorney advised the School District to direct its employees to remain silent regarding the reasons for the plaintiff's termination and later denied that he had in fact given such advice. Even under such a circumstance, the *Goetz* Court concluded that the conduct alleged did not constitute action "under color of state law," and the plaintiff's Section 1983

claims against the attorney were dismissed. *Goetz v. Windsor Central School District*, 593 F.Supp. at 528–529 (citing *Briscoe v. LaHue*, 460 U.S. 325, 330 n. 6, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)).

In this case, Plaintiff has neither alleged in its complaint nor otherwise established that Abt was acting under "color of state law." Plaintiff's memorandum in support of its motion for summary judgment is completely devoid of any evidentiary facts that would support its burden to establish that Abt was acting under color of state law when he offered his opinion and advice to the Planning Board. *See Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079, 1082–1083 n. 3 (2d Cir.1990). In fact, a review of Plaintiff's memorandum of law reveals the complete absence of any act on the part of Abt that could be construed to be an action under "color of state law." The simple fact of the matter was, and is, that Abt was a consultant to the Planning Board, and did not act under color of state law when he provided the Planning Board with his opinion as to whether the application for the CVS complied with the ADD Ordinance. There is no allegation or evidence to substantiate that Abt was acting in any capacity other than as a privately retained consultant who merely provided his professional advice to his client pursuant to his service agreement with that client. Like the consultant in *Omnipoint*, Abt's review of the application for the proposed CVS in his capacity as a professional architectural consultant to the Planning Board, and his offering of an opinion to the Planning Board was not action taken under color of state law.

Furthermore, similar to the Town in *Omnipoint*, the Planning Board in this case had the ultimate authority to accept Abt's opinion, and to approve or deny the proposed application. *See* [Exhibit "L" p. 23, line 13 to p. 25, line 21; p. 47, p. 62,

lines 18–25, p. 63, lines 2–10, p. 91, lines 19–23, p. 92, lines 20–23; Exhibit "M" p. 109, lines 16–22 to p. 110, line 2].

Plaintiff's bare conclusory allegation in its complaint that Mr. Abt invented his recommendations in conspiracy with the Defendants to prevent the Plaintiff from erecting a CVS Pharmacy store on the location also fails to establish that Abt was a state actor. *See* Exhibit "Q"; *see also Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993) (complaints containing only conclusory, vague or general allegations that the Defendants have engaged in a conspiracy to deprive the Plaintiff of his constitutional rights are properly dismissed; "diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct"); *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir.1993) (affirming summary judgment dismissing conspiracy claim where Plaintiff's only evidence was that Defendants met and communicated on several occasions and there was nothing suspicious or improper in such meetings); *San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 256 (2d Cir.1984) (upholding summary judgment in Section 1983 conspiracy action where Plaintiff's conclusory allegations were unsupported by any specific facts and were flatly contradicted by Defendant's evidence). Other than vague, conclusory and speculative allegations, the Plaintiff has submitted no evidence to establish such alleged conspiracy. *See* [Abt Aff ¶ 18 Exhibit "J" p. 220, line 15 to p. 222, line 16, p. 226, lines 18–22; Exhibit "L" p. 93, lines 20–23; Exhibit "M" p. 110, lines 3–12; Exhibit "N" p. 121, lines 21–25].

Since the rendering of professional advice under circumstances identical to those present in the case at bar is not actionable under Section 1983, Plaintiff's motion for summary judgment must be denied, and Abt's cross-motion for summary judgment is granted.[2]

## 2. Plaintiff's § 1983 Claims Against the Village Defendants are Dismissed

The Village Defendants, Marcia Mattheus, Jerome O'Donnell, Elaine McClung, Roger A. Pikul, Reynell Andrews and George Urbannick also cross-move for summary judgment dismissing the § 1983 claims asserted against them. Their motion has merit, regardless of the theory asserted by plaintiff, be it unconstitutional taking of property, denial of substantive due process, denial of procedural due process or denial of equal protection.

### A. Plaintiff's Takings Claim Is Not Ripe and Must Be Dismissed

In Count I, Plaintiff alleges that Defendants, under color of law, took its property without just compensation in violation of the Fourth and Fifth Amendments of the Constitution.

Plaintiff's takings claim fails because it is not ripe for review.

The United States Supreme Court in *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), set forth a two-pronged test for assessing the ripeness of a regulatory takings claim. The first prong requires the government entity charged with enforcing the regulation at issue to have rendered a "final decision." *Id.* at 186, 105 S.Ct. 3108. The second prong requires the Plaintiff to first seek compensation from the State as long as the State provides a reasonable, certain

**2.** To the extent it refers to matters that occurred prior to her election as Mayor in April 1999, Plaintiff's claim against Defendant Mattheus would also be dismissible on this ground. However, I am disposing of the entire claim against Mattheus on other grounds.

and adequate provision for obtaining compensation. *Id.* at 194, 105 S.Ct. 3108.

A Federal Court may review a land use decision by a municipal agency only if that agency has reached a "final decision." The rationale behind the finality requirement is that a court cannot determine whether a Plaintiff has been deprived of property arbitrarily or otherwise, until it has a final, definitive position before it on how the administrative agency will apply the regulation at issue to the particular land in question. *Southview Associates Ltd. v. Bongartz,* 980 F.2d 84, 97 (2d Cir. 1992). A final decision is "a definitive position on the issue that inflicts an actual, concrete injury." *Williamson County Regional Planning Comm'n,* 473 U.S. at 193, 105 S.Ct. 3108. The *Williamson* Court explained the rationale for the final decision requirement as follows:

> Our reluctance to examine claims until such a final decision has been made is compelled by the very nature of the inquiry required by the Just Compensation Clause....this Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.

*Id.* at 190–91, 105 S.Ct. 3108 (citations omitted).

Moreover, in *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), the plaintiff's taking claim was found to be unripe because although the city commission had rejected one development plan, the plaintiff did not seek approval for any other plan and, therefore, it was not clear whether the Commission would deny approval for all uses that would enable the plaintiff to derive economic benefit from the property. *Id.* at 136–137, 98 S.Ct. 2646.

Additionally, in *MacDonald, Sommer & Frates v. County of Yolo,* 477 U.S. 340, 351–352, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986), the County Board of Supervisors affirmed the County Commission's rejection of a landowner's subdivision plan. The Supreme Court held that based upon the pleadings, which revealed that only one subdivision proposal had been submitted and only one had been denied approval, the landowner had failed to satisfy the final decision requirement because the possibility existed that some other development would be permitted.

Finally, in *Southview,* further discussed *infra,* plaintiffs submitted, and the Vermont Environmental Board ("VEB") denied, an application for a permit for a thirty-three unit subdivision under Vermont Act 250 because it interfered with a deeryard. The VEB's rejection of the plaintiffs' proposal in no way precluded the plaintiffs from submitting another proposal, and it was not clear whether the VEB would deny approval for all uses that would enable the plaintiffs to derive economic benefit from the property. Therefore, the *Southview* Court found that the plaintiffs' taking claim was not ripe.

In the instant case, the Planning Board never denied Plaintiff's application. In fact, the records and meeting minutes from the Planning Board indicate that it conditionally approved for development Plaintiff's application to develop the property. [Exhibit "O;" Exhibit "P;" Abt Aff. ¶ 18]. The Planning Board approved Plaintiff's application on the condition that, *inter alia,* there be one row of parking in the front of the building, as opposed to the two rows initially proposed by Plaintiff.

[Exhibit "O"]. Approval—even conditional approval—is the antithesis of denial. Plaintiff's takings claim must fail on this basis alone.

Furthermore, a conditional approval cannot be interpreted as a decision that denies Plaintiff the ability to use and derive economic benefit from his property. The fact that Plaintiff wanted two rows of parking and the Planning Board was willing only to approve one row of parking, but otherwise approved the proposed project for construction, does not establish the requisite basis for a takings claim. If Plaintiff thought that the Planning Board was refusing either to approve or deny his application, it could and should have brought an Article 78 proceeding in state court to force the Planning Board to make a decision. Instead it chose to abandon the project altogether.

The claim also fails because Plaintiff has never sought compensation from the State prior to asserting its regulatory takings claim.

As long as the State has a "reasonable, certain and adequate provision for obtaining compensation." *Williamson*, 473 U.S. at 194, 105 S.Ct. 3108 (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 124–125, 95 S.Ct. 335, 42 L.Ed.2d 320, (1974)), an aggrieved party must obtain recourse through that means before bringing a takings claim in federal court. This requirement stems from the notion that the Fifth Amendment does not proscribe the taking of property; it proscribes only taking *without just compensation.* Accordingly, a landowner has not suffered a violation of the Fifth Amendment until he has attempted without success to obtain just compensation through the procedures provided by the State. For example, in *Williamson*, the Supreme Court found that the Tennessee State Courts had interpreted state statutory law to allow recovery when restrictive development regulations gave rise to a taking, because the claimant had not shown the Tennessee procedure to be unavailable or inadequate, its taking claim was premature. *Williamson*, 473 U.S. at 197, 105 S.Ct. 3108; *see also Southview*, 980 F.2d at 100 (plaintiffs could not establish that Vermont's procedure for compensation for a taking was either unavailable or inadequate, and that since plaintiffs never sought compensation in the Vermont Courts, their federal taking claim was not ripe for review).

In the instant case, Plaintiff never sought compensation for the alleged taking of its property in the Courts of New York. Yet, New York has a "reasonable, certain and adequate provision for obtaining compensation." In fact, Section 6 of Article I of the New York State Constitution provides that "No person shall be deprived of life, liberty or property without due process" and Article I (§ 7[a]) provides that "property shall not be taken for public use without just compensation." N.Y. Const. art. I, §§ 6, 7.

Moreover, the stated purpose of the New York Eminent Domain Procedure Law ("NY EDPL") is to provide a procedure by which property shall be acquired by exercise of New York State's eminent domain power, as well as assure that just compensation shall be paid to those persons whose property rights are acquired by the exercise of that power. N.Y. EDPL § 101; *see also Gazza v. New York State Department of Environmental Conservation*, 89 N.Y.2d 603, 614, 657 N.Y.S.2d 555, 559, 679 N.E.2d 1035 (1997) ("indeed, the United States and New York State Constitutions both provide that a party must be compensated when such interests are "taken" away so a landowner may look to the government for just compensation upon the destruction of a formerly owned property interest"); *East*

*Thirteenth Street Community Association v. New York State Urban Development Corporation,* 84 N.Y.2d 287, 294, 617 N.Y.S.2d 706, 708, 641 N.E.2d 1368 (1994) (the N.Y. EDPL was intended to standardize the means for the public acquisition of property and for determining just compensation for those whose property is taken).

Since the enactment of the N.Y. EDPL in 1977, the New York Court of Appeals has progressively established a basis for awarding "just compensation" to claimants that have suffered from both temporary and permanent takings, while remaining within the confines of the United States and New York State Constitutions. *See e.g., 520 East 81st Street Associates v. The State of New York,* 99 N.Y.2d 43,47, 750 N.Y.S.2d 833, 835–36, 780 N.E.2d 518 (2002) (temporary takings require just compensation to the claimant pursuant to both the United States and New York State Constitution consisting of lost rental value, plus any diminution in value over the period of the taking); *Hakes v. State,* 81 N.Y.2d 392, 398, 599 N.Y.S.2d 498, 500, 615 N.E.2d 982 (1993) (claimants were entitled to compensation under the State and Federal Constitutions on the basis of property value); *Donaloio v. State,* 64 N.Y.2d 811, 812–13, 486 N.Y.S.2d 924, 925, 476 N.E.2d 323 (1985) (compensation awarded pursuant to the United States and New York Constitution on the basis of its "best value" as an apartment complex).

In spite of this "reasonable, certain and adequate" provision for obtaining compensation from the State, Plaintiff failed to seek relief in the State court system. For this additional reason, I find that Plaintiff's claim is not ripe and must be dismissed.

### B. Plaintiff Was Not Deprived of Substantive Due Process

In order to demonstrate a substantive due process claim in a land use case, it is well-settled that a party must first establish that it had a constitutionally protected property interest, and then establish the deprivation of that interest was without due process of law. *See Zahra v. Town of Southold,* 48 F.3d 674, 679–680 (2d Cir.1995); *Southview Associates Ltd. v. Bongartz,* 980 F.2d 84, 101 (2d Cir.1992); *RRI Realty Corp.,* 870 F.2d 911, 917 (2d Cir.1989); *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 60 (2d Cir.1985). The question of whether the applicant has a property interest is normally a matter of law for the court. *RRI Realty Corp.,* 870 F.2d at 918.

"To have a property interest entitled to Fourteenth Amendment procedural protection, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The main element in determining the existence of a property interest is the extent to which the deciding authority may exercise discretion in reaching its decision, rather than on a party's estimate of the likelihood of a certain decision. If the deciding authority has discretion to grant or deny a permit or application and has not yet acted, the applicant has no vested property right to issuance of the permit or a favorable decision on the application. *Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir.1996) (no protected property interest in variance where zoning regulations granted zoning board with discretionary approval powers); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 192 (2d Cir.1994) (landowners had no property interest in enforcement of zoning laws for adjacent property since municipal officials had broad discretion in determining whether to grant or deny building permit, site plan and variances); *RRI Realty*

*Corp.*, 870 F.2d at 918–19 (no property interest existed in building permit since town officials had wide discretion to either grant or deny the permit); *Dean Tarry Corp. v. Friedlander*, 826 F.2d 210, 213 (2d Cir.1987) (property owner's expectation of success in receiving planning board approval for his project did not give rise to a cognizable property right on account of the broad discretion that the zoning ordinance conferred on the planning board); *Orange Lake Assocs., Inc. v. Kirkpatrick*, 825 F.Supp. 1169, 1178 (S.D.N.Y.1993) *aff'd*, 21 F.3d 1214 (2d Cir.1994) (no protected property interest in subdivision plat where New York Town Law § 276 granted local planning board discretionary approval powers); *Deepwells Estates Inc. v. Incorporated Village of Head of the Harbor*, 973 F.Supp. 338, 349 (E.D.N.Y.1997) (no protected property interest in subdivision plat where New York Village Law granted local planning board discretionary approval powers).

In *RRI Realty Corp.* the Plaintiff-developer brought suit under 42 U.S.C. § 1983 against the Village of Southampton alleging that the denial of a building permit violated its right to substantive due process. Even though there was evidence that the municipal officials had made favorable statements about the probability that the application would be granted, the Court of Appeals concluded that the applicant had no constitutionally protectable property right because the municipal Architectural Review Board ("ARB") had discretion to deny RRI's application. In this regard, the Court looked at the fact that the Village Code conferred wide discretion on the ARB in reviewing the final design plans, and cited the following part of the Village Code: "The [ARB] is charged with the duty of exercising sound judgment and of rejecting plans which, in its opinion, are not of harmonious character because of proposed style, materials, mass, line, color

. . . ." *RRI Realty Corp.*, 870 F.2d at 919. The Second Circuit concluded that, "as a matter of law, there was no property interest in the permit." *Id.* at 919 (emphasis added).

Similarly, in *Southview Associates Ltd. v. Bongartz*, 980 F.2d 84 (2d Cir.1992), plaintiff, a property developer, asserted a claim against individual members of the Vermont Environmental Board, claiming that the defendants had deprived them of due process and equal protection of the law, and that defendants' denial of the development permit application constituted a taking without just compensation and a violation of plaintiffs' substantive due process rights. The Second Circuit held that the plaintiff had no property interest in a development permit, because the VEB's power to approve or disapprove an application for a permit was discretionary. The Court found that the VEB based its decision on Vermont Act 250, which compelled the VEB to first determine whether any party opposing the application could demonstrate that the subdivision would "destroy or significantly imperil necessary wildlife habitat." *Id.* at 102 (citing 10 V.S.A. § 6086(a)(8)(A) (1984)). If the VEB answered that question in the affirmative, it also had to decide

> (1) whether the "economic, environmental or recreational loss to the public from the destruction or imperilment of the habitat" is outweighed by the "economic, social, cultural, recreational or other benefit to the public" that the subdivision would yield; (2) whether "all feasible and reasonable means of preventing or lessening the destruction, diminution or imperilment of the habitat" have been or will continue to be applied; and (3) whether the applicant owns no "reasonably acceptable alternative site" which would "allow the . . . subdivision to fulfill its intended purpose."

*Id.* (citations omitted). The Second Circuit concluded that the VEB's decision, which required the application of the subcriteria and the weighing of the public benefit and loss, called for the exercise of a significant measure of discretion. Therefore, the Court of Appeals ruled that Plaintiffs had no property interest and, consequently, their substantive due process claim failed. *Southview,* 980 F.2d at 102.

The record before this Court clearly establishes that the Planning Board, like the ARB in the *RRI* case, and the VEB in *Southview,* had discretion with regard to approval of proposed projects in the ADD. Even a cursory review of the ADD Ordinance reveals that the Planning Board had broad discretionary powers to review proposed applications within the ADD. The Planning Board had the discretion to:

> approve, disapprove, or approve with modification the project in order to maintain the desirable character of the architectural design district and prevent construction, reconstruction, alteration, resurfacing or demolition *out of harmony* with existing buildings with the design district as a whole insofar as *style, materials, line and detail* are concerned and thus prevent the degradation of property values, safeguard public health and interest and promote safety and preserve the beauty and character of the architectural design district

[Abt Aff. Exhibit "C" § 15.2.3] (emphasis added). The ADD Ordinance goes on to state that:

> the planning board *may,* in exercising or performing its powers, duties or functions with respect to any improvements in the architectural design district, advise and recommend with respect to the exterior construction, reconstruction, alteration, resurfacing, demolition or use of such improvement, determinations or

conditions which are more restrictive that those prescribed or made by or pursuant to other provisions of law applicable to such activities, work or use [Abt Aff. Exhibit "C" § 15.2.4] (emphasis added). In making determinations under the ADD, the proposals shall be considered in regard to the general criteria and purpose of § 15.1 and the following specific criteria: "The structure shall fit substantially into the overall plan and general design of the district as outlined in the Weintraub-diDomenico study of 1984..." [Exhibit "C" § 15.3.1].

The plain meaning of the words used in the ADD Ordinance establishes that the Board had discretion to determine whether a project would "fit substantially into the overall plan and general design of the district as outlined in the Weintraub-diDomenico study." In fact, although Plaintiff asserts in its memorandum of law that, "There was nothing restricting the approval of the project by the Planning Board as a matter of right in the Village of Goshen Zoning Code," Plaintiff nonetheless essentially admits that the Planning Board did have discretion when it came to determining approval under the ADD ordinance, noting that "The only possible reference of concern for the project as submitted was Section 15 dealing with the 'Architectural Design District'" [Plaintiff Memorandum in Support at p. 2].

The fact that the Plaintiff obtained an analysis and opinion from its attorney and engineering consultants and concluded that "the project was sure to be approved" is of no consequence. *See RRI Realty Corp. v. The Incorporated Village of Southampton,* 870 F.2d at 919 (2d Cir. 1989). The ADD Ordinance, conferred considerable discretion to the Planning Board. Plaintiff, therefore, had no property interest in the Planning Board's approval. Accordingly, Plaintiff's motion for

summary judgment on its substantive due process claims must be denied and Defendants' cross-motions for dismissal must be granted.

### C. Plaintiff's Procedural Due Process Claim Lacks Merit

■ It is well established that "the fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914); *Boddie v. Connecticut,* 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). This opportunity must be "granted at a meaningful time and in a meaningful manner," *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), and the hearing must be "appropriate to the nature of the case." *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). "The degree of formality and procedural requisites of an adequate hearing will vary from one situation to another." *Burtnieks v. The City of New York,* 716 F.2d 982, 987 (2d Cir.1983).

In the instant case, Plaintiff was provided with procedural due process. First of all, the Village of Goshen's Planning Board never finally denied Plaintiff's building permit application. In fact, as noted previously, it granted the application, albeit subject to conditions. However, even if the Board had denied the application, it held numerous meetings regarding Plaintiff's building permit application. Plaintiff was always given prior notice of those meetings, and the record shows that a representative of Plaintiff was always present at those meetings. During those meetings, Plaintiff representative was always given the opportunity to confront adverse witnesses and present opposing arguments. *See generally* [Joseph Aff. Exhibit "D"]. All of these hearings took place before Plaintiff decided to throw in the towel. Therefore, there is no question that Plaintiff was provided with procedural due process.

### D. Plaintiff's Equal Protection Claim Under 42 U.S.C. § 1983 Must Also Be Dismissed

■ In order to establish an equal protection claim under 42 U.S.C. § 1983, a party must show that:

(1) the person, compared with others similarly situated, was selectively treated; and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 16 (2d Cir.1999); *LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir. 1994); *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1352 (2d Cir.1994); *LeClair v. Saunders,* 627 F.2d 606, 609–10 (2d Cir.1980). The key issue in equal protection claims alleging selective enforcement is impermissible motive. *Overhoff v. Ginsburg Development, LLC, et al.,* 143 F.Supp.2d 379, 388 (S.D.N.Y.2001) (citing *Lisa's Party City Inc.,* 185 F.3d at 16).

Plaintiff has elicited no evidence to support its claim that it was selectively treated. Apparently, Plaintiff believes that it was treated differently from Healy's Chevrolet, which the Board granted permission to cover an entire vacant lot adjacent to its car dealership with parking spaces. But Healy, the owner of the property, had applied for an accessory use of the vacant land in connection with its existing car dealership. The Healy application did not involve the construction of a new building on a vacant lot, so there was no issue of set-back, which was the critical issue

raised by Plaintiff's application to develop property owned by a third party.

Assuming arguendo that a reasonable trier of fact could conclude that Healy's was similarly situated to Plaintiff, the record is devoid of evidence—even a scintilla of evidence—suggesting that the Defendants acted out of some impermissible motive. There is no evidence that impermissible factors like race or religion came into play in this instance—indeed, the record contains no indication of anyone's race, religion, ethnicity, or other constitutionally suspect classification. There is similarly no evidence that Plaintiff previously exercised any constitutional right—for example, that Plaintiff's principal spoke out against Goshen officials and was denied the permit in retaliation. Plaintiff's only "evidence" of bad faith on the part of Defendants is the Board's supposed 3–year "delay" in ruling on his application.

Even if the Plaintiff had a property interest in the Planning Board's approval, which it does not, Plaintiff's argument that unreasonable delay is an adequate basis for a § 1983 claim would still fail. Plaintiff's main case in support of the availability of its unreasonable delay argument is *Eaton v. Solon,* 598 F.Supp. 1505, 1512 (D.C.Ohio 1984). As the Court in *Eaton* recognized, however, "The mere filing of an application followed by inaction by the governmental agency, in and of itself, is not sufficient to maintain a § 1983 action . . . the property owner must aggressively and affirmatively assert his rights." *Id.* At the bare minimum, the Court found, the property owner should demand a hearing and decision at the state administrative level, which can be done "either [ ] by letter or other written notice." *Id.* Plaintiff was afforded a hearing. As for a decision, Plaintiff has presented no evidence that he formally demanded Board action in the face of its alleged inaction.

Certainly, the vaguely worded request to Ms. Mattheus, then a private citizen with no demonstrated connection to the Board, asking the Board to make a decision on Plaintiff's application does not come close to meeting this threshold. As noted above, Plaintiff did not bring an Article 78 proceeding in the Orange County Supreme Court, which the statutory mechanism for obtaining action by a recalcitrant or dilatory public body.

3. **Plaintiff's 42 U.S.C. § 1985 Must Be Dismissed As Against All Defendants**

■ To state a claim under 42 U.S.C. § 1985(3), Plaintiff must allege, at a minimum, that Defendants engaged in (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any class of persons of the equal protection of the law, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a member of a class is either injured in his person or property or deprived of any right or privilege or a citizen of the United States. *See Gray v. Town of Darien,* 927 F.2d 69, 73 (2d Cir.), *cert. denied,* 502 U.S. 856, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991); *Greene v. Hawes,* 913 F.Supp. 136, 144 (N.D.N.Y.1996); *Trautz v. Weisman,* 809 F.Supp. 239, 248 (S.D.N.Y.1992).

Moreover, the Second Circuit has held that "an action will lie under [Section] 1985(3) when a Plaintiff is injured by a private conspiracy to interfere with his constitutional rights, so long as there is 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.,* 968 F.2d 286, 290–91 (2d Cir.1992) (quoting *Colombrito v. Kelly,* 764 F.2d 122, 130 (2d Cir. 1985)). The "class-based animus" require-

ment applies with equal force to claims of conspiracy under color of state law. *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994). The Supreme Court added the "class-based animus" requirement "in order to prevent [Section] 1985(3) from being broadly—and erroneously—interpreted as providing a federal remedy for all 'tortious, conspiratorial interferences with the rights of others.'" *Jews for Jesus,* 968 F.2d at 291.

Plaintiff in this case is not entitled to relief from any of the Defendants pursuant to Section 1985(3). First, as discussed above, Plaintiff has not adequately demonstrated an interference with a cognizable federal right. Second, regardless of whether Plaintiff is ultimately alleging a private conspiracy between Abt, the Board and Mattheus, as a private citizen or a conspiracy under the color of state law between Abt, the Board and Mattheus, as the Mayor, or any combination thereof, Plaintiff simply has not provided evidence of the type of class-based discriminatory animus required by *Jews for Jesus* and similar cases to raise a federal question.

Without alleging any facts to support the argument that Plaintiff is subject to class-based discrimination, Plaintiff's complaint is deficient as to the Section 1985(3) claims. Plaintiff has not brought forth evidence sufficient for a reasonable jury to find in its favor on any its claims, as required to survive a summary judgment motion. *See Grillo v. New York City Transit Authority,* 291 F.3d 231, 234 (2d Cir.2002) ("In order to survive a motion for summary judgment on his ... 1985(3) conspiracy claims, [Plaintiff] must come forward with at least some credible evidence that the actions of individual [Defendants] were motivated by racial animus or ill-will") For this additional reason, as well as for the reasons articulated above in relation to Plaintiff's § 1983 conspiracy and equal protection claims, Plaintiff's § 1985 claims against any and all Defendants are dismissed.

## IV. CONCLUSION

For the foregoing reasons, the remaining Defendants' cross-motions for summary judgment are granted. Plaintiff's motion for summary judgment is necessarily denied. The Clerk is directed to enter judgment for Defendants and to close the file.