OPINION OF THE COURT
Simons, J.
This appeal concerns the development of a New York City site for public housing. Petitioners are condominium boards, tenants and residents of buildings near the project area who seek to challenge the actions of the condemnor, respondent Urban Development Corporation (UDC). The threshold question presented is whether they have standing to do so in this proceeding brought under EDPL 207. We conclude they do not and therefore affirm.
In 1991, H.E.L.P., a nonprofit sponsor of housing for homeless families, became interested in acquiring a lot between 13th and 14th Streets and Third and Fourth Avenues to which the City of New York had taken title by condemnation in 1968. The site was substantially undeveloped and consisted of a parking lot and three boarded-up vacant buildings. H.E.L.P. planned to construct a 14-story building to house *292 homeless and low income families, preferably from the surrounding community, and an office and community center to serve the facility’s residents. In addition, the plan for the project included a two-story commercial structure, to be constructed by H.E.L.P. at a cost of $4,000,000 but licensed for use by the City, which retained ownership of the 14th Street portion of the site. Funds for the project were to be provided by the City and the State through the Housing Finance Agency (HFA) under the Private Housing Finance Law.
Because HFA itself did not possess either the power of eminent domain or the power to override City regulations which might delay the project, HFA enlisted respondent UDC, which possesses both those powers, as a participant in the project. On February 20, 1992, UDC determined that the project qualified as a "land use improvement project” pursuant to section 6260 (c) of McKinney’s Unconsolidated Laws of NY (New York State Urban Development Corporation Act § 10 [c]; L 1968, ch 174, § 1, as amended), and therefore constituted an appropriate project for UDC involvement. UDC adopted a General Project Plan, and gave notice of a public hearing on the proposed condemnation to be held in July. At the hearing held on July 15, 1992, those present expressed both support and opposition to the project, and the record was left open an additional 30 days for further written comment. On August 19, 1992, UDC issued its determination and findings, which included a declaration that UDC would exercise its power of condemnation over the site in order to implement the project. HFA, as lead agency, had previously undertaken environmental review pursuant to the State Environmental Quality Review Act (SEQRA) and on August 3, 1992, had issued a negative declaration that the project would have no significant adverse effect on the environment requiring the preparation of an Environmental Impact Statement.
Petitioners instituted an original proceeding in the Appellate Division pursuant to EDPL 207 seeking judicial review of the actions of the condemnor. They alleged that UDC had acted outside the scope of its authority in lending its powers to HFA and in involving itself in a project whose primary purpose was something other than the clearance of a substandard area. They further alleged UDC’s determination was jurisdictionally defective for failure to comply with the requirements of the UDC Act, EDPL and SEQRA, and that the proposed construction of a commercial building for the City constituted an illegal use of funding earmarked for homeless *293 families in violation of the Private Housing Finance Law and that the UDC Act unconstitutionally delegates legislative authority to that agency. The Appellate Division addressed these issues on the merits, confirmed the determination and findings of respondent UDC in all respects and dismissed the petition.
Historically, the parties and issues in condemnation proceedings have been limited. Persons having some proprietary interest in property could challenge a governmental taking. They were aggrieved because they possessed rights which would be extinguished by the government’s action and thus were entitled to have those rights recognized and compensated. Generally, however, persons, such as petitioners, could not participate in eminent domain proceedings. They were not aggrieved because they had no personal or property rights which would be affected by the taking. Arguably, the language of EDPL 207 (A) changes those rules. That section provides that ”[a]ny person or persons jointly or severally, aggrieved by the condemnor’s determination and findings * * * may seek judicial review thereof’ (emphasis added). EDPL 103 (C) defines condemnees as "the holder[s] of any right, title, interest, lien, charge or encumbrance in real property subject to an acquisition or proposed acquisition”; i.e., those commonly recognized as aggrieved parties. Section 207 (A), however, by referring to aggrieved persons rather than condemnees, implies that the Legislature intended that persons other than those with proprietary interests possess assertable rights under EDPL. Thus, the question presented by this appeal is whether these noncondemnees may be aggrieved by actions of the condemnor, and therefore have standing to maintain this proceeding pursuant to the EDPL. Their aggrievement necessarily depends on the rights the statute extends to them and whether the condemnor has invaded or jeopardized those rights.[1]
The EDPL was enacted in 1977 and superseded several statutes granting eminent domain powers to various governmental bodies (see, EDPL 104, and cited Cross References in *294 McKinney’s Cons Laws of NY, Book 16A, at 73 et seq.). It was intended to standardize the means for the public acquisition of property and for determining just compensation for those whose property is taken. However, the new statute recognized other purposes as well. Among them was the need "to establish [an] opportunity for public participation in the planning of public projects necessitating the exercise of eminent domain; to give due regard to the need to acquire property for public use as well as the legitimate interests of private property owners, local communities and the quality of the environment, and to that end to promote and facilitate recognition and careful consideration of those interests” (see, EDPL 101). Consistent with these purposes, the statute provides that prior to acquisition the condemnor must hold public hearings to review the proposed public use and the general effect on the environment and residents "at a location reasonably proximate to the property which may be acquired for such project” (see, EDPL 201). The notice and hearing provisions found in EDPL 201-204 are the only provisions in the EDPL which explicitly address the interests of noncondemnees.
The drafters of the legislation viewed the required hearing as a standardization of hearing requirements previously mandated in many cases by Federal, State and local laws (see, 1974 Report of State Commn on Eminent Domain and Real Property Tax Assessment Review, Comment to EDPL 201, at 14). However, when the proposed legislation reached the Legislature, the provision for public hearings was its most controversial feature. There had been increasing public resistance to some projects, accompanied by time-consuming litigation, and many viewed the hearing requirement as an additional step to the condemnation process which would inject further uncertainty and delay in the completion of public projects (see, e.g., Letter of Herbert Smith, Special Assistant for New York State Assn of Counties, Bill Jacket, L 1977, ch 839; Letter of Harold L. Fisher, Chairman, Metropolitan Transp Auth, op. cit; Letter of Theodore Spatz, Counsel to State Comptroller Arthur Levitt, op. cit; but see, Letter of Langdon Marsh, Acting First Deputy Commr of Dept of Envtl Conservation, op. cit.; Mem of NY St Bar Assn. op. cit.). The Commission recognized the charge that increased public participation could delay or even halt projects, but it believed that the proposed procedures of notice and hearing could forestall the increasing amount of litigation and that the narrow scope of judicial review authorized by section 207 would expedite development *295 once the hearing was concluded.[2] The "partnership of planning” envisaged by the statute, the Commission stated, would lessen the public’s "natural” resistance to projects (see, 1974 Report of Commn, op. cit., at 17).
Nothing in the Commission Report or the legislative history suggests that these provisions were intended to extend to noncondemnees standing to challenge the condemnor’s actions in subsequent judicial proceedings. The interest addressed in sections 201-204 was solely to permit public participation in the planning of the project so that the impact of the proposed project could be addressed at the planning stage. Indeed, the Commission Report noted that participation in the judicial proceedings under section 207 was to be limited to those suffering injury, " 'economic or otherwise’ ” (Report, op. cit., at 22, citing Sierra Club v Morton, 405 US 727). Thus all that petitioners are entitled to under EDPL is a properly conducted hearing held on proper notice. Because such a hearing took place here, petitioners have no assertable EDPL standing.
Alternatively, petitioners urge that this Court should take a more expansive approach to the question, one akin to that employed in determining standing in proceedings involving zoning laws. In Matter of Sun-Brite Car Wash v Board of Zoning & Appeals (69 NY2d 406) we extended standing to challenge zoning determinations to property holders in the immediate vicinity of the premises which were the subject of a zoning determination, without their having to plead and prove special damages or injury in fact. Petitioners suggest such a rule is appropriate here. Our holding in Sun-Brite, however, was premised, not only upon the possibility of an adverse effect on the property owners, but on the additional ground that " 'the interest asserted is arguably within the zone of interest to be protected by the statute’ ” (supra, at 412, quoting Matter of Dairylea Coop, v Walkley, 38 NY2d 6, 9). Indeed, the "zone of interest” test has developed into the primary test for standing in the administrative context, focusing on whether the interest sought to be protected is within the concerns the Legislature sought to advance or protect by a *296 statutory enactment (see, Society of Plastics Indus, v County of Suffolk, 77 NY2d 761, 773-774).
There are notable differences between zoning statutes and eminent domain proceedings, which make clear that petitioners are not within the zone of interest contemplated by the EDPL. Standing in zoning cases is a broader concept because zoning statutes seek to protect "the welfare of the entire community” (see, Sun-Brite, supra, at 413), by making a balanced and effective use of the available land and providing for the public need for varying types of uses and structures (see, Berenson v Town of New Castle, 38 NY2d 102; see also, Asian Ams. for Equality v Koch, 72 NY2d 121). In contrast, eminent domain statutes seek primarily to protect the interests of property owners and to ensure that their property is taken only in accord with proper procedure and for just compensation (see, Fifth Ave. Coach Lines v City of New York, 11 NY2d 342; 51 NY Jur 2d, Eminent Domain, § 320). To the extent the New York Eminent Domain Procedure Law now takes cognizance of other interests — the right of the public to be informed of a proposed condemnation and to be given the opportunity to participate in planning of the project — those interests are protected by the statutory mandate of a public hearing.
Petitioners next urge that they have standing because of a recent amendment to the statute. In 1991 the New York State Legislature amended the scope of judicial review under EDPL 207 to include review of compliance with SEQRA (see, EDPL 207 [C] [3], as amended by L 1991, ch 356). Petitioners urge that because they have standing to seek SEQRA review in a CPLR article 78 proceeding, they also have it in this proceeding. They contend further, that such SEQRA standing under the amendment endows them with standing under EDPL for all purposes. The legislative history indicates otherwise.
The amendment was enacted in response to our ruling in Pizzuti v Metropolitan Tr. Auth. (67 NY2d 1039). That case involved an owner whose property was partially taken for improvement of a railroad line and who alleged environmental harm to the remainder. Consistent with the statutory scheme, our decision reaffirmed the narrow scope of review available in eminent domain proceedings and held that the owner of a condemned property could not, in a proceeding brought pursuant to EDPL 207, seek judicial review of the *297 condemnor’s compliance with the demands of SEQRA. Although environmental impact was a factor to be identified and considered by a condemnor during the hearing stage of the proceedings (see, EDPL 204 [B] [3]), review was limited under the former statute, even for the condemnee, to whether there had been compliance with the procedures of EDPL (see, Pizzuti v Metropolitan Tr. Auth., 114 AD2d 943, 944, affd 67 NY2d 1039, supra).
In response, the Legislature expanded the scope of judicial review to include judicial review of whether the condemnor’s determination was in accord with SEQRA requirements. The purpose of incorporating SEQRA review into EDPL was to promote judicial efficiency in proceedings to acquire real property (see, Atty Gen’s Legis Program, Bill Jacket, L 1991, ch 356). Under the prior law, as we construed it in Pizzuti, a condemnee seeking review of SEQRA issues and eminent domain issues had to bring two separate proceedings with two separate Statutes of Limitations, and the Appellate Division could conceivably have been forced to review the same case twice, once on direct appeal from the condemnation determination and again upon appeal from article 78 review of the SEQRA challenge. The 1991 amendment was intended to permit a reviewing court to pass on both the EDPL issues and the SEQRA issues in one proceeding thereby facilitating prompt review and conserving judicial resources (see, Mem of Atty Gen, 1991 NY Legis Ann, at 190).
It is apparent that these purposes will not be realized if SEQRA review under subdivision (C) (3) of section 207 is limited to claims of condemnees. Accordingly, a noncondemnee who cannot only allege but also establish EDPL aggrievement, and who can also maintain a separate article 78 challenge to a SEQRA finding, is entitled to seek SEQRA review in the eminent domain proceeding also. That narrowly expanded scope of review, however, applies only to those first establishing EDPL standing. It does not allow a petitioner possessing only SEQRA standing to acquire EDPL standing generally by bootstrapping EDPL claims onto a legitimate SEQRA claim. The merits of petitioners’ claims, whether under SEQRA, the UDC Act, or the Private Housing Finance Law must be pursued in other appropriate proceedings.
Finally, petitioners point out that in cases of so-called "friendly condemnation” — in which the condemnee desires the condemnation as ardently as does the condemnor — important
*298 community concerns may receive short shrift. This is especially true where, as here, the condemnor is the UDC with its powers to override local procedural safeguards and controls like the City’s Uniform Land Use Review Procedure. Nevertheless, that concern, standing alone, does not entitle a party to standing (see, Society of Plastics Indus, v County of Suffolk, 77 NY2d 761, 769, supra). If standing is to be expanded to noncondemnees, it is for the Legislature to address the problem created by the exercise of UDC’s override powers in the friendly condemnation context. Petitioners have chosen an inappropriate vehicle in which to challenge the 13th Street project.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
Order affirmed, with costs.

. In Matter of Jackson v New York State Urban Dev. Corp. (67 NY2d 400), a challenge to the proposed Times Square redevelopment project alleging violations of both SEQRA and EDPL had been brought by, among others, elderly, disabled residents of a neighborhood abutting the project area. We reviewed the case on the merits, without discussion whether this group of petitioners had standing under EDPL. However, the question of standing was not raised by the parties to those proceedings.

. EDPL 207 (C) limits judicial review to whether (1) the proceeding conformed with the Federal and State Constitutions, (2) the proposed acquisition is within the condemnor’s statutory jurisdiction or authority, (3) the condemnor’s determination and findings were made in accordance with procedures set forth in EDPL article 2 and ECL article 8, and (4) whether a public use, benefit or purpose will be served by the acquisition.