**J.C. PENNY CORPORATION, INC., Plaintiff,**

v.

**CAROUSEL CENTER COMPANY, L.P., Defendant,**

No. 02–CV–1360.

United States District Court, N.D. New York.

Feb. 20, 2004.

Harter, Secrest & Emery, LLP, Rochester, NY (Edward F. Premo, Celeste D. Flippen, Phv, of counsel), for plaintiff.

Stanley, Sweeney, Riley & Allen, PC, Albany, NY (David C. Kuracina, of Counsel), for defendant.

## BACKGROUND

MUNSON, Senior District Judge.

Carousel is a limited partnership, its limited partner is Pyramid Company of Onondaga ("Pyramid"), which owns 98% of Carousel. Carousel's general partner is Carousel General Company, L.L.C., which owns 2% of Carousel. The center of this lawsuit is the Carousel Mall ("the Mall"), which is operated by Carousel under a 1995 assignment from Pyramid, the Mall's builder. Pyramid, either directly or through affiliates, owns or controls Carousel Center Company, L.P.

On January 10, 1990, plaintiff entered into a lease agreement with Pyramid. This agreement went through amendments and/or supplements evolved into a Second Amended Lease dated August 30, 1995. Subsequently, Carousel became the successor-in-interest to the rights and obligations of Pyramid under the lease. This lease contained Consent Provisions whereby the Mall was not to be changed or altered without plaintiff's consent.

In May 2000, Pyramid requested the Syracuse Industrial Development Agency's ("SIDA") assistance in constructing the DestiNY USA project ("DestiNY USA" or "the Project"). On April 30, 2002, SIDA adopted its Resolution pursuant to the § 204 of the New York State Eminent Domain Procedure Law ("EDPL"), making the determinations and findings required to authorize the acquisition of certain interests in the Mall for the construction of the Project, including any provision of a tenant's lease which might restrict or impede the development of the Project. The provision states that "the Company [Pyramid] has requested that the Agency [SIDA] acquire certain real property interests in or effecting Existing Center Land within the existing Carousel Center to the extent necessary or appropriate to construct the proposed modifications to Carousel Center necessary or appropriate to transform it into the DestiNY USA Project" ('Carousel Center Interests'). Exhibit 1 of the Resolution defines "Carousel Center Interests" to include, "among others, interests of some or all of the tenants in varying degrees created by leases or agreements that may establish restrictions on: the use of the lands surrounding the mall building; the use of space within the mall building that are inconsistent with DestiNY USA Project designs; the use of common interior areas within the mall building; visibility and/or signage; the name of the project; and any other applicable interests that may exist."

The Resolution further provides that "the Company [Pyramid] agrees to indemnify, defend and hold harmless ... the Agency [SIDA] ... from any Claims (as defined in the Agency Agreement) imposed ... or incurred ... or asserted ... by reason of or arising from the institution, prosecution or abandonment of any eminent domain proceedings ... with respect to any of the Land or the Public Improvement Land (including the Existing Center Land) ..."

In May 2002, plaintiff instituted an original proceeding in the Appellate Division (4th Dept.) under EDPL § 207, that SIDA's Resolution and Determinations and Findings be rejected. This type of action is a limited special proceeding that

can only be brought originally in the Appellate Division. It is not brought as a plenary action in a court of general jurisdiction.

At the hearing before the Appellate Division, Carousel maintained that unless and until the Consent Provisions were condemned by the SIDA, plaintiff could effectively stop DestiNY USA by virtue thereof, and that the Consent Provisions were "real property" interests subject to commendation. Plaintiff contended that the Consent Provisions of the Lease were not "real property" within the meaning of the EDPL. On November 15, 2002, the Appellate Division confirmed SIDA's Resolution and Determination and Findings holding that the Consent Provisions were interests in real property subject to condemnation by the SIDA, and dismissed plaintiff's petition. Plaintiff appealed this decision to the New York Court of Appeals where it dismissed it *sua sponte* upon its finding that no substantial constitutional question was directly involved.

SIDA will not obtain any real property, including the Consent Provisions in plaintiff's lease, until under EDPL § 402:(1) it has filed an acquisition map; (2) it has served and filed a notice of petition and petition to confirm such a map; (3) a hearing has been held on such petition; and (4) an order is issued granting the petition by the Supreme Court, Onondaga County.

EDPL § 402(B)(5) states that "[u]pon the filing of the order and acquisition map, the acquisition of the property, the acquisition of the property in such map shall be complete and title to such property shall then be vested in the condemnor." Since neither of these statutory steps have yet to be undertaken by SIDA, it has not acquired any of the Consent Provisions of the lease and they remain in force.

If the EDPL § 402 proceeding is initiated and completed, EDPL § 501 through § 514 sets forth the procedures used to determine the compensation to be paid for the taking.

Between October 2002 and December 2002, defendant's workmen drove steel piling into a portion of the Mall's parking lot near plaintiff's location in that structure. On or about October 15, 2002, Carousel announced that it was going to hold a groundbreaking ceremony for DestiNY USA on October 24, 2002. On or about October 24, 2002, Carousel announced that "once the groundbreaking ceremony" took place, construction was to be started on a proposed 1300 room hotel and parking deck. Before making these announcements, Carousel had said it was conducting only "test pilings" and that it had not actually commenced construction. However, the renewed activity on the sites could have been associated with the start of a construction project.

On November 8, 2002, plaintiff voluntarily agreed upon measures to complete the piling work under certain conditions. The Amended Complaint alleges that "Carousel continued with construction activities at the Mall site until early December 2002", at which time it stopped all activity. Plaintiff does not allege that any construction activities have occurred since December 2002. All pilings were driven below grade, paved over, and all construction equipment was removed from the site.

Based on this series of incidents, plaintiff commenced this law suit on October 24, 2002. The parties then entered into negotiations to discuss an interim stipulation to deal with the then current situation, alleviate impacts on plaintiff's store, and avoid a motion for a preliminary injunction. On November 14, 2002, the parties agreed to a Stipulation and Order that directed the parties to hold settlement discussions, limit the Mall area in which Carousel could conduct construction activities, and provided a mechanism for enforcement. The

document further provided that it shall not be deemed consent by plaintiff to any construction activity or the expansion of the Mall. By its terms, the Stipulation and Order expired on January 10, 2003.

When settlement discussions proved unfruitful, plaintiff served Carousel with an Amended Complaint in April 2002. Jurisdiction is founded on diversity and the amended complaint set forth two causes of action sounding in breach of contract. The first seeks specific performance and injunctive relief, requesting that Carousel be compelled to honor its contractual obligations and prohibited it from engaging in any further violation of it expressed and implied obligations under the lease. It also seeks to enjoin Carousel from continuing to breach its implied covenant of good faith and fair dealing. The second cause of action seeks monetary damages for injuries which have already been incurred due to Carousel's breach of its expressed and implied obligations under the lease, and from Carousel's construction activities; injunctions enjoining Carousel from proceeding with the proposed construction of DestiNY USA; and procuring, assisting or paying SIDA for the condemnation of the Consent Provisions; and for attorneys fees plaintiff expended in defending its rights in the EDPL Article 2 proceeding and in the instant case.

Currently before the court are defendant Carousel's motion to dismiss the Amended Complaint either on the pleadings pursuant to Fed.R.Civ.P. 12(c), or for summary judgment pursuant to Fed. R.Civ.P 56, and, alternatively, staying any further proceedings pending the conclusion of the Article 4 and 5 proceedings in state court under New York State Eminent Domain Proceedings Law, and staying discovery in this case pending (a) determination of this motion; and (b) the conclusion of the EDPL, Article 5 proceeding in state court.

Plaintiff has entered opposition to defendant's motions and stay requests.

## DISCUSSION

Defendant Carousel has moved for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c) and summary judgment pursuant to Fed.R.Civ.P. 56. Rule 12(c) provides that "[i]f, on a motion for judgment on the pleadings, matters outside of the pleadings are presented to and not excluded by the court", the motion will be treated as one for summary judgment and disposed of as provided in Rule 56. Since the parties in this action have presented extensive matters outside the pleadings which the court will consider, defendant Carousel's motion will be treated as one for summary judgment and disposed of as provided in Rule 56.

Rule 56 of the Federal Rules of Civil Procedure permits summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). More than a "disfavored shortcut," summary judgment is an important procedure regarded as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catreet,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(quoting Federal Rule of Civil Procedure 1). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw inferences against the moving party. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)(*per curiam*). "The non-movant cannot escape summary judgment by merely vaguely asserting the existence of some unspecified disputed

facts, or defeat the motion through mere speculation or conjecture." *Western World Insurance Company v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990). An issue of credibility is insufficient to preclude the granting of summary judgment. Neither side can rely on conclusory allegations or statements in affidavits. The disputed issue of fact must be supported by evidence that would allow a "rational trier of fact to find for the non-moving party." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Unsupported allegations will not suffice to create a triable issue of fact. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995). "Supposition does not create a genuine issue of material fact, instead it creates a false issue, the demolition of which is the primary goal of summary judgment." *Hedberg v. Indiana Bell Telephone Company, Inc.*, 47 F.3d 928, 929 (7th Cir.1995). Nor will factual disputes that are irrelevant to the disposition of the suit under governing law preclude any entry of summary judgment. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509.

■ Defendant Carousel contends that this action should be dismissed because plaintiff's claims are barred by the doctrine of *res judicata* and related doctrines of issue preclusion, or the court should dismiss them under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and related abstention doctrines.

Plaintiff's action is not barred by the doctrine of *res judicata* or related doctrines of issue preclusion. The clear language of EDPL § 207 and § 208 prohibited plaintiff from asserting its breach of lease counterclaims against Carousel in the Appellate Division because it lacked jurisdiction to hear such claims. *Brody v. Village of Port Chester*, 345 F.3d 103 (2d Cir.2003)

Federal courts have a tireless responsibility to adjudicate cases brought within their jurisdiction. It is now black-letter law that abstention from federal jurisdiction is the narrow exception not the rule. *Moses S. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 4, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983).

The traditional requirements for application of the *Younger* abstention doctrines requires that three conditions be met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in the proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims. *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir.2001).

■■ A recent Second Circuit decision, however, held that a court may decide a case on *Younger* abstention without confirming the existence of constitutional standing. Federal courts have the inherent flexibility "to chose among threshold grounds for disposing of a case without reaching the merits". Accordingly, we may decide that abstention is proper under *Younger* without deciding whether plaintiffs have demonstrated Article III injury-in-fact. *Spargo v. New York State Commission on Judicial Conduct*, 351 F.3d 65 (2d Cir.2003).

The first *Younger* requirement has not been met in this case because there is no ongoing state court proceeding. The EDPL § 207 proceeding has been fully concluded, and there is nothing further currently pending in the state court, and whether there ever will be, is problematic.

On April 30, 2002, SIDA held a public hearing pursuant to EDPL Article 2. Upon commencement of the hearing, SIDA's lawyer remarked that SIDA had concluded that the proposed expansion of the Carousel Center constitutes a project that would

serve public purposes, "including, without limitation, advancing job opportunities, general prosperity and public welfare of the People of the State of New York and the City of Syracuse ... advancing economic development and promoting tourism."

 In general, the power of eminent domain may be exercised to take property as long as there is a legitimate public purpose for the taking. *Matter of East Thirteenth Street Community Association v. New York State Urban Development Corporation,* 84 N.Y.2d 287, 617 N.Y.S.2d 706, 641 N.E.2d 1368 (1994); 51 N.Y. Jur 2d, Eminent Domain, § 19. The terms "public use" or "public purpose" are broadly defined as encompassing virtually any project that may further the public benefit, utility or advantage. (51 N.Y. Jur 2d Eminent Domain § 22). Projects may have a public purpose notwithstanding that private entities may directly benefit. *Matter of Waldo's v. Village of Johnson City,* 74 N.Y.2d 718, 544 N.Y.S.2d 809, 543 N.E.2d 74 (1989); *Matter of Duryea v. Town of East Hampton,* 172 A.D.2d 752, 569 N.Y.S.2d 139 (2d Dept 1991); 51 N.Y. Jur 2d, Eminent Domain § 25. If it is found that a new business project may create jobs, provide infrastructure, and stimulate the local economy, those are legitimate public purposes which justify the use of the power of eminent domain. *Sunrise Properties v. Jamestown Urban Renewal Agency,* 206 A.D.2d 913, 614 N.Y.S.2d 841 (4th Dept.1994); leave to appeal denied, 84 N.Y.2d 809, 621 N.Y.S.2d 518, 645 N.E.2d 1218 (1994).

Regarding benefits to private entities in condemnations, the New York Court of Appeals has held that it does not undercut the public purpose of condemnation of land that private entities motives are to serve their own interests. "There is nothing malevolent about that." *Yonkers Community Development Agency v. Morris,* 37 N.Y.2d 478, 373 N.Y.S.2d 112, 335 N.E.2d 327 (1975). Most sponsors are, as may be expected in our private enterprise economy, nonpublic and, at least in large part, profit motivated. Indeed, that may even be desirable, unless there is such a reliable projection of profitability, the soundness and stability of the sponsor's project may come into question. *Id.*

Plaintiff claims that the taking of the property here would not be for the public use, but for the benefit of defendant Carousel. The record clearly indicates that the SIDA found several purposes that would be served, including advancing the general prosperity and economic welfare of both the residents of the City and the general population of the State, promoting tourism and attracting visitors from outside the economic development region, promoting employment in the City, and increasing the tax base as well as tax revenues. *Matter of Kaufmann's Carousel, Inc. v. City of Syracuse Industrial Development Agency,* 301 A.D.2d 292, 296, 750 N.Y.S.2d 212 (4th Dept.2002); leave to appeal denied, 99 N.Y.2d 508, 757 N.Y.S.2d 819, 787 N.E.2d 1165 (2003). Carousel's contribution to the project does not convert the public purpose into a private one. *Rodrigues v. Town of Beekman,* 120 A.D.2d 724, 502 N.Y.S.2d 778 (2d Dept. 1986), appeal dismissed, 69 N.Y.2d 822, 513 N.Y.S.2d 1027, 506 N.E.2d 537 (1987).

 "[T]he duty of good faith and fair dealing between the parties to a contract is well recognized" under New York law. *Mark Patterson, Inc. v. Bowie,* 237 A.D.2d 184, 186 (1st Dept.1997)(citing *New York University v. Continental Insurance Company,* 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995)("implicit in every contract is a covenant of good faith and fair dealing.")). There is, however, ample authority that "a breach of that duty will be dismissed as redundant where

the conduct allegedly violating the implied covenant is also the predicate for a claim for breach of covenant of an express provision of the underlying contract." *Houbigant, Inc. v. ACB Mercantile, Inc.*, 914 F.Supp. 964, 989 (S.D.N.Y.1995)(citing *Geler v. National Westminster Bank USA*, 770 F.Supp. 210, 215 (S.D.N.Y.1991); *New York University*, 87 N.Y.2d at 319, 639 N.Y.S.2d 283, 662 N.E.2d 763) ("The cause of action [for breach of an implied covenant of good faith and fair dealing] is duplicative of the first cause of action for breach of contract and should have been dismissed.") accord *Englehard Corp. v. Research Corp*, 268 A.D.2d 358, 702 N.Y.S.2d 255 (1st Dept.2000); *Odingo v. Allstate Insurance Company*, 251 A.D.2d 81, 672 N.Y.S.2d 727 (1st Dept.), leave to appeal denied, 92 N.Y.2d 810, 680 N.Y.S.2d 55, 702 N.E.2d 840 (1998). In fact, in 1996, a district court in this Circuit stated that in every case it had found in which the plaintiff alleged both a breach of contract and breach of an implied covenant of good faith and fair dealing, the court had dismissed the latter claim as duplicative. See > *W.S.A. Inc. v. ACA Corp.*, 1996 WL 551599 at * 9 (S.D.N.Y. Sept.27, 1996), See also > *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)(implied obligation is simply "in aid and furtherance of other terms of the agreement of the parties"); N.Y.U.CC S 1—203 Official Comment, ("This section does not support an independent cause of action for failure to perform or enforce in good faith ... [T]he doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached.").

■ In the case at bar, no difference is apparent in the factual underpinnings of plaintiff's breach of contract claims and its claim for breach of the implied covenant of good faith and fair dealing. The court finds that this claim is duplicative of plaintiff's breach of contract claim, and wholly subsumed within those claims.

It is uncontested that the consent terms of plaintiff's lease agreement are still in full force and effect and will remain so until defendant institutes a proceeding under EDPL § 402. Thus it is possible that any of the lease's terms, including, of course, the consent provisions, can be, or could have been breached.

Plaintiff claims Carousel has breached the lease's consent terms, and consequently, is entitled to damages for monetary losses incurred, and injunctive relief to prevent further construction. Plaintiff's demands stem from the time Carousel and others started planning for the Mall's alteration without plaintiff's knowledge or consent, then had piles driven into the Mall's parking lot prior to the ceremony marking the start of the alteration construction. These demands will continue until the matter is resolved, or the Consent Provisions are acquired by defendant after a successful EDPL § 402 proceeding.

■ Plaintiff does not have to wait for Carousel to bring further condemnation proceedings, the case may continue to proceed along its procedural course. "A federal court need not stay its jurisdictional hand when there is no state action pending at the time the federal suit is filed, even though there is a substantial likelihood that a state proceeding will be instituted in the future." *CECOS International, Inc. v. Jorling*, 895 F.2d 66, 72 (2d Cir.1990).

Accordingly, Defendant's motion for summary judgment dismissing the Amended Complaint is **DENIED**; those portions of the same motion requesting that this action or discovery be stayed pending the re-institution and completion of the condemnation proceeding in state court are

**DENIED**; the portion of this motion requesting that discovery be stayed pending this motion's disposition is **DENIED** as **MOOT**.

IT IS SO ORDERED.