OPINION OF THE COURT
 

 Ciparick, J.
 

 The broad issue on this appeal is the proper measure of damages for a temporary regulatory taking of property by the State. Specifically, we must determine the correct method of calculating damages when a regulatory taking delays the imminent sale of property. On the facts presented here, we conclude that just compensation requires an award for the lost use of sale proceeds from the time of the taking and not an award that represents only the interim decline in the value of the property.
 

 Claimant, 520 East 81st Street Associates, once owner of a Manhattan apartment building, sued the State for the temporary regulatory taking of 39 apartments. The taking was effected through the enactment of chapter 940 of the Laws of
 
 *45
 
 1984 and ended with this Court’s invalidation of that legislation in 1994
 
 (Manocherian v Lenox Hill Hosp.,
 
 84 NY2d 385 [1994],
 
 cert denied
 
 514 US 1109 [1995]). The parties do not dispute that a taking occurred, nor the 1985 and 1994 values assigned to the property by the courts below. The only issue to be resolved on this appeal is the correct method of computing damages.
 

 Beginning in 1968, Lenox Hill Hospital leased 39 of the 163 apartments in claimant’s building which the hospital then sublet to its employees. In 1969, the apartments became subject to New York City’s Rent Stabilization Law requiring claimant to offer lease renewals to its stabilized tenants (Local Law No. 16 [1969] of City of New York § 1, codified at Administrative Code of City of NY § 26-501
 
 et seq.).
 
 In 1981, claimant began converting the apartment units to condominiums, giving tenants the option to purchase their apartments or continue leasing until they vacated, at which point claimant could take possession and sell the apartments. Lenox Hill Hospital did not purchase, instead opting to continue leasing the 39 stabilized apartments and subletting them to its employees.
 

 In 1983, the Legislature enacted the Omnibus Housing Act ([OHA] L 1983, ch 403), which amended sections of the Rent Stabilization Law and the Real Property Law to prohibit a primary rent-stabilized tenant from subletting an apartment for more than two years out of the four-year period preceding the termination of a sublease (Administrative Code § 26-511 [c] [12] [f]) and also required stabilized tenants to obtain their landlord’s permission before entering into a sublease (Real Property Law § 226-b [2]). Notwithstanding the requirements of the OHA, Lenox Hill, a primary tenant, continued to sublet its 39 apartments to its employees on an indefinite basis without claimant’s permission. Claimant thus intended to terminate the Lenox Hill leases upon their expiration on July 31, 1985 and then sell the apartments as condominium units.
 

 Before the expiration date of the leases, however, the Legislature enacted chapter 940 of the Laws of 1984. That legislation provided that not-for-profit hospitals leasing rent-stabilized apartments, including Lenox Hill, could sublet those apartments exempt from the two-year residency and landlord approval requirements implemented in the OHA, and their employee subtenants would be deemed qualified primary tenants for purposes of lease renewal. In
 
 Manocherian,
 
 this Court invalidated chapter 940, holding that the legislation was intended for the primary benefit of Lenox Hill Hospital and
 
 *46
 
 failed to substantially advance a closely and legitimately connected state interest. Claimant commenced this proceeding seeking compensation for the temporary regulatory taking of the apartments from August 1, 1985, the date on which claimant would have terminated the Lenox Hill leases but for the enactment of chapter 940, through October 20, 1994, the date of decision in
 
 Manocherian.
 

 Since the existence and duration of the taking were not at issue, the dispute in the Court of Claims centered on the issue of just compensation. A key aspect of that dispute was the question of what constituted the highest and best use of the 39 apartments at the time of the taking. Claimant argued that the best use of the property was sale as condominium units while the State argued that the highest and best use was as rental apartments. Both sides introduced evidence from appraisers who valued the property based on their divergent views of its highest and best use.
 

 The Court of Claims determined that the highest and best use for the apartments was sale as condominium units. Using sales data on similar apartments in the same building, the court determined that the value of the 39 apartments on the date the taking began, August 1, 1985, was $3,264,996. The court fixed the post-taking October 20, 1994 value of the apartments at $2,632,496. Concluding that the “difference between the value of the 39 apartments on August 1, 1985, and their value on October 20, 1994, constitutes the direct damages to the claimant as a result of the taking,” the court subtracted the post-taking figure from the pretaking figure, the difference representing compensation for the diminution in value of the apartments over the course of the takings period. The court also adopted claimant’s operating loss figure of $343,950, representing the difference between the income from the 39 Lenox Hill leases and the carrying costs of the apartments over the same nine-year period. Finally, the court applied statutory 9% interest to each category of claimant’s damage award from August 1, 1985 to the date of decision and, thereafter, to the date of judgment. The total damages award, with interest, amounted to $2,345,842.16.
 

 In arriving at its damages award, the Court of Claims rejected claimant’s method of calculating damages. Among other things, the court did not add interest to the August 1985 sale value over the course of the nine-year takings period before subtracting the 1994 sale value. Although claimant argued that such interest was necessary in order to compensate it for
 
 *47
 
 the lost ability to realize a return on the 1985 sale proceeds, the court concluded that “any damage suffered by the claimant attributable to the lost opportunity to earn a return is accounted for by the interest on the damages to which the claimant is entitled by statute from the date of the taking.”
 

 The Appellate Division unanimously affirmed (288 AD2d 67 [2001]). Rejecting claimant’s request for interest on the 1985 sale proceeds, the Court determined that applying statutory interest in that manner would violate the requirement in CPLR 5001 (a) that interest be applied to a “sum awarded,” since the 1985 sale value was merely a figure used in arriving at the final sum awarded and, moreover, the application of interest would have the effect of compensating claimant for the sale of the apartments when, in fact, claimant actually retained the apartments and continued to collect rents over the takings period. We granted leave to appeal (97 NY2d 611 [2002]) and now modify.
 

 Both the State and Federal Constitutions require that owners receive just compensation when private property is taken for public use (NY Const, art I, § 7 [a]; US Const 5th Amend). Just compensation puts the property owner in the same relative position it would have enjoyed had the taking not occurred
 
 (see City of Buffalo v J.W. Clement Co.,
 
 28 NY2d 241, 258 [1971]). As this case underscores, a key factor in arriving at just compensation for a temporary taking is the determination of how the property would have been used by its owner over the course of the takings period. Thus, when the best use for property over the period of a temporary taking would be as rental property, just compensation consists of lost rental value, plus any diminution in value to the fee over the period of the taking
 
 (see Kimball Laundry Co. v United States,
 
 338 US 1, 7 [1949];
 
 Keystone
 
 Assoc.
 
 v State of New York,
 
 55 AD2d 85, 90 [1976],
 
 revd on concurring in part and dissenting in part op of Greenblott, J.,
 
 45 NY2d 894 [1978]).
 

 Claimant’s primary contention is that just compensation here requires interest on the 1985 sale value of the 39 apartments over the nine-year takings period. According to claimant, the award for diminution in value does not correspond to actual damages it suffered as a result of not being able to sell the apartments in 1985 and earn a return on those proceeds.
 

 The State counters that the award made here fully compensated claimant for its losses. Relying on
 
 Keystone
 
 (45 NY2d 894), the State claims that just compensation for a temporary
 
 *48
 
 taking is the rental value of the property, plus diminution in value to the fee over the period of the taking. According to the State, the award below compensates for those two categories of loss. The State views the award for diminution in value as compensation for damage to the fee over the course of the taking, while the operating loss award is said to represent the difference between the amount claimant actually earned from renting the apartments at stabilized prices and the amount that would have been earned from renting the apartments at market rates. The State’s position, however, stems primarily from the rejected position that the highest and best use for the property was as rental units.
 

 The finding below was that the highest and best use for the 39 apartments, as of 1985, was sale as condominium units. In essence, the courts below agreed that, but for the enactment of chapter 940, claimant would have sold the 39 apartments in 1985. Under just compensation principles, the proper calculation of damages therefore must put claimant, as close as possible, in the same position it would have been in had the apartments been sold in 1985.
 

 Just compensation requires that claimant be awarded interest on the 1985 sale proceeds from the date the deprivation occurred
 
 (see e.g., Washington Mkt. Enters., Inc. v City of Trenton,
 
 68 NJ 107, 124, 343 A2d 408, 417 [1975]). This represents the amount claimant would have been expected to earn had the money been available for use. As the Washington Supreme Court stated in
 
 Sintra, Inc. v City of Seattle,
 
 “[w]e assume a person who received the money value of his or her property as of the date of the taking has a beneficial use available for these funds. Interest in this context is not an award of prejudgment interest on a liquidated sum in the traditional sense, but is a measure of the rate of return on the property owner’s money had there been no delay in payment” (131 Wash 2d 640, 656, 935 P2d 555, 563 [1997] [internal citation omitted]).
 

 Thus, upon remittal, the Court of Claims should determine and then apply the appropriate rate of return on the 1985 sale proceeds over the nine-year takings period. In aiding that determination, we note only that the “amount of interest necessary to bring the payment into accord with the constitutional requirement [of just compensation] is a judicial question, although the interest rate fixed by the Legislature will be deemed presumptively reasonable unless the claimant rebuts the presumption with evidence of prevailing market rates establishing that the statutory rate is so unreasonably low as not to
 
 *49
 
 constitute just compensation”
 
 (Adventurers Whitestone Corp. v City of New York,
 
 65 NY2d 83, 87 [1985] [internal quotation marks omitted]). State Finance Law § 16 provides that the “rate of interest to be paid by the state upon any judgment or accrued claim against the state shall not exceed nine per centum per annum.”
 

 Since the award of operating loss expenses and interest thereon has not been placed at issue before us, we decline to pass on it at this juncture.
 

 Accordingly, the order of the Appellate Division should be modified, with costs to claimant, and the case remitted to the Court of Claims for further proceedings in accordance with this opinion and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Levine, Wesley and Rosenblatt concur; Judges Smith and Graffeo taking no part.
 

 Order modified, etc.