[799 NYS2d 1]

520 EAST 81ST STREET ASSOCIATES, Appellant, v STATE OF NEW YORK, Respondent.

First Department, April 19, 2005

### APPEARANCES OF COUNSEL

*Rosenberg & Estis, P.C.*, New York City (*Gary M. Rosenberg* and *Jeffrey Turkel* of counsel), for appellant.

*Eliot Spitzer, Attorney General*, Albany (*Patrick Barnett-Mulligan* and *Peter H. Schiff* of counsel), for respondent.

### OPINION OF THE COURT

SAXE, J.

Over a decade ago, it was determined that the Legislature's enactment of chapter 940 of the Laws of 1984 constituted a regulatory taking by the State of apartment building units leased to Lenox Hill Hospital for sublease to the hospital's employees (*see Manocherian v Lenox Hill Hosp.*, 84 NY2d 385 [1994]). Claimant was among the apartment owners to which the holding was applicable. When claimant then brought the present action, the Court of Claims determined that claimant was entitled to an award of compensation for the taking, pursuant to the Just Compensation Clause of the United States and New York State Constitutions (US Const 5th Amend; NY Const, art I, § 7 [a]). On appeal, the Court of Appeals held that just compensation must include the interest claimant would have earned on the sale proceeds had the taking not occurred, calculated from the time of the taking (99 NY2d 43, 48 [2002]). The question that has now arisen in this lengthy litigation, one of first impression in this state, is whether a nine-year delay in obtaining just compensation warrants an award of compound rather than simple interest to the aggrieved property owner.

As explained by the Court of Appeals (*id.* at 44-45), claimant was the owner of a 163-unit apartment building located at 520 East 81st Street in Manhattan. The building was converted to condominium ownership in 1981, and Lenox Hill Hospital, the primary lessee of 39 rent-stabilized apartments in the building which it in turn subleased to hospital employees, declined to purchase its units. Claimant therefore remained the owner of those units. Although the Omnibus Housing Act, enacted in

1983 (L 1983, ch 403), prohibited rent-stabilized tenants from subletting for more than two years out of a four-year period preceding the termination of the sublease, or without the landlord's permission (Rent Stabilization Law [Administrative Code of City of NY] § 26-511 [c] [12] [f]; Real Property Law 226-b [2]), Lenox Hill continued to sublet its 39 apartments yearly. Accordingly, claimant began to terminate the Lenox Hill leases, the last of which would have expired and been subject to termination on July 31, 1985.

In an effort to protect Lenox Hill Hospital's interest in continuing to lease the apartments at issue (*see Manocherian*, 84 NY2d 385, 391 [1994], citing Senate Debates, NY Senate Bill S 9983, June 28, 1994), in 1984 the Legislature enacted chapter 940 of the Laws of 1984, applicable to not-for-profit hospitals, providing that "their employee subtenants would be deemed qualified primary tenants for purposes of lease renewal" (99 NY2d at 45). In a legal challenge brought by another building owner that also leased apartments to Lenox Hill Hospital, the statute was ultimately found to be unconstitutional, in that it did not advance a legitimate state interest, and constituted an impermissible taking of property (*see id.* at 45-46; *Manocherian*, 84 NY2d at 393, 398).

Claimant then commenced this action to obtain money damages, divided into three categories: interest that would have been earned on the proceeds from the sale of the 39 units had it not been precluded from selling them by the statute, calculated from August 1, 1985, the date it would have been able to sell them; the diminution in value of the property during the nine-year period until the statute was struck down; and the operating losses sustained during that period with respect to the apartments. After trial, the court found that the value of the units at the time of the taking in 1985 was $3,264,996, but had decreased to $2,632,496 in October 1994, when the statute was found to be unconstitutional, and awarded claimant damages for the loss in value, $632,500; it also awarded claimant $343,950 for operating losses. However, it rejected the claim for lost interest that could have been earned on the full sale price of the units beginning August 1, 1985 (*see* 99 NY2d at 46). This determination was modified by the Court of Appeals with the explanation that "[j]ust compensation requires that claimant be awarded interest on the 1985 sale proceeds from the date the deprivation occurred" (*id.* at 48). The Court therefore directed that "upon remittal, the Court of Claims should determine and then apply

the appropriate rate of return on the 1985 sale proceeds over the nine-year takings period" (id.).

At the new trial, claimant offered the testimony of a managing director at the Bank of New York, who posited that a reasonably prudent investor with $3,264,996 on August 1, 1985, employing a conservative investment strategy, would have invested in a diversified portfolio of reasonably risked public and private securities. The representative combination of investments he examined for this purpose was a combination of Standard & Poor's 500 Index stocks (weighted 60%) and the government and investment grade corporate bonds comprised in the Lehman Aggregate Index of bonds (weighted 40%). Claimant's expert testified to the rate at which such a portfolio would have earned interest in each of the years at issue. Moreover, in calculating the cumulative return on the investment year by year, to arrive at the total amount this initial investment would have earned over the approximately nine-year takings period, the expert made his calculations on the assumption that this reasonably prudent investor would have reinvested the interest earned. He concluded that claimant, investing the sale proceeds in such a portfolio and reinvesting the interest earned each year would have earned a total return of 194% by October 20, 1994.

The trial court concluded that the yearly rates of return set forth by claimant's expert on the hypothetical portfolio provided a proper basis for calculating the rate of return to be applied over the takings period. Because those rates fluctuated significantly over the years, the court used the median of all the rates, 11%, as the rate to apply in calculating the interest on the value of the property to which claimant was entitled as just compensation for the taking. However, it declined to compound the interest, explaining that the only basis for doing so was the expert's assumption that any amount earned would be reinvested.

For the reasons that follow, we hold that the calculation of interest should have been compounded for the takings period.

When the Court of Appeals remanded this matter for a further award representing the interest lost on the full value of the property, it explained the important concept that, "[u]nder just compensation principles, the proper calculation of damages therefore must put claimant, as close as possible, in the same position it would have been in had the apartments been sold in 1985" (99 NY2d at 48). As the Court further explained, for this purpose interest serves a somewhat different purpose than it does when applied to the amount of a judgment. "Interest in

this context is not an award of prejudgment interest on a liquidated sum in the traditional sense, but is a measure of the rate of return on the property owner's money had there been no delay in payment" (*id.*, quoting *Sintra, Inc. v City of Seattle*, 131 Wash 2d 640, 656, 935 P2d 555, 563 [1997]).

"Compound interest" is interest paid on both principal and previously accumulated interest; at the end of each interest period, the accrued interest is added to the principal for purposes of future calculations of interest (*see* 72 NY Jur 2d, Interest and Usury § 2; Black's Law Dictionary 817 [7th ed]). Claimant points out that had it been able to sell the property in 1985 for $3.2 million, it would have received hundreds of thousands of dollars in interest during each year of the prejudgment interest period, and would have been able to reinvest that money. By limiting it to simple interest, claimant argues, the court proceeded as if claimant would have taken each year's interest payment and placed it under a mattress. Only an award of compound interest, claimant contends, would actually place it "as close as possible, in the same position it would have been in had the apartments been sold in 1985" (99 NY2d at 48).

Therefore, the question is whether claimant is entitled to the amount it would have earned had it sold the apartments on August 1, 1985, and invested that money as claimant's expert described what a prudent investor would have done, *including reinvesting the interest earned on that investment* during the following years.

We agree with claimant to the extent of holding that in order to put it in the position it would have been in had the apartments been sold in 1985, it must be awarded compound interest calculated on the 1985 value of the property for the nine-year period during which it was prohibited from terminating the leases and selling the property.

It is true, as the State points out, that in New York "agreements to pay compound interest have not found favor with the courts" (*Giventer v Arnow*, 37 NY2d 305, 308 [1975]); however, this matter does not involve an agreement as contemplated by that case. Similarly, the statutory scheme for awarding postjudgment interest, or, where applicable, prejudgment interest, does not provide for compound interest (*see* CPLR 5001-5004). However, as pointed out earlier, in this context the calculation of interest is simply a way to measure what the property owner would have earned on the money had there been no delay due to the taking.

Additionally, as claimant recognizes, neither New York's Eminent Domain Procedure Law nor the case law applying it have contemplated or awarded compound interest; EDPL 514 specifically contemplates awards of simple interest at up to the statutory rate where the advance payment by the governmental authority was less than the property's value as ultimately determined by the court. Indeed, claimant acknowledges that simple interest is sufficient to ensure just compensation when the procedure set forth in EDPL article 5 is followed. However, the taking here did not follow the procedure contemplated by the EDPL, but rather was a surreptitious and unacknowledged regulatory taking resulting in an over nine-year delay in the property owner's ability to freely market the property.

Although the case law of this state does not discuss the use of compound interest in the context of just compensation for a taking of property, it is appropriate that we consider the federal case law on point, inasmuch as the issue is one of constitutional dimension.

The concept of just compensation was defined by the United States Supreme Court in *Seaboard Air Line R. Co. v United States* (261 US 299 [1923]), which specified that

> "[w]here the United States condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce *the full equivalent of that value paid contemporaneously with the taking*" (at 306 [emphasis added]).

That "the owner is entitled to interest thereon sufficient to ensure that he is placed in as good a position pecuniarily as he would have occupied if the payment had coincided with the appropriation" was confirmed by the Supreme Court in *Kirby Forest Industries, Inc. v United States* (467 US 1, 10 [1984]).

Many federal courts have recognized that the entitlement to interest on the value of the property may entail compound interest, beginning with *United States v Northern Pac. Ry. Co.* (51 F Supp 749 [ED Wash 1943]). These cases acknowledge that in certain instances involving a long delay before compensation, only compound interest will justly compensate a property owner. In *Bowles v United States* (31 Fed Cl 37 [1994]), the court awarded compound interest from the date of the taking:

> "While compound interest ordinarily does not run

against the government without its consent, this prohibition . . . does not apply in fifth amendment takings cases. Simple interest cannot put the property owner in as good a position pecuniarily as he would have occupied if the payment had coincided with the appropriation . . . . *The economic reality is simply that if the full value of just compensation had been put in escrow contemporaneously with the alleged taking, the landowner would have been able to earn compound interest.* Thus, prohibiting the landowner from recovering compound interest acts to retroactively reduce the value of just compensation at the time of taking by undervaluing its present worth. Accordingly, the court holds that, because of the long delay since the date of taking in this case, the award of compound interest is not only proper, but its denial would effectively undercut the protections of the fifth amendment to our Constitution." (At 52 [emphasis added and citations omitted].)

More recently, in *Independence Park Apts. v United States* (61 Fed Cl 692 [2004]), compound interest was awarded to property owners who had suffered a temporary regulatory taking and encountered a delay in relief similar to that considered here; the court said:

"compound interest may be necessary 'to accomplish complete justice' under the just compensation clause. *Dynamics Corp. of Am. v. United States*, 766 F.2d 518, 520 (Fed.Cir.1985). Among the considerations that bear on this question, those most significant for this case seem to be the time lag between the taking and the compensation and the use to which the plaintiff might have put the award." (At 717; *see also NRG Co. v United States*, 31 Fed Cl 659 [1994].)

Similarly, in the present case, because claimant was prevented from obtaining the value of its property for over nine years, it is now entitled to receive the equivalent of the amount it would have if that value had been paid contemporaneously with the taking, in order to put it in the same position it would have been in had the apartments been sold on August 1, 1985. Inasmuch as a prudent investor would have reinvested interest earned on its investments, we hold that the trial court's implicit finding to the contrary does not constitute a fair interpretation

of the evidence (*see Thoreson v Penthouse Intl.*, 80 NY2d 490, 495 [1992]), and to that extent the court was in error. While we accept the court's 11% figure for determining the yearly interest rate that would have been earned on the property's sale during the takings period, from August 1, 1985 to October 20, 1994, that interest must be compounded annually.

Claimant concedes that State Finance Law § 16 limits postjudgment interest to 9% per year, but argues that the constitutional imperative of just compensation requires an award of compound interest not just for the period up to the striking down of the law that created the regulatory taking, but also through the date of the initial money judgment in this matter on December 6, 2000. We disagree.

Claimant's reliance upon *Adventurers Whitestone Corp. v City of New York* (65 NY2d 83, 87 [1985]), a condemnation case, is misplaced. Unlike a case involving a physical, permanent taking of property, in the context of this temporary regulatory taking, claimant was no longer deprived of the beneficial use of the property once the applicable statute was struck down in 1994. The takings period for which the Constitution requires full compensation is limited to the time during which the actions of the State prevented claimant from receiving the full beneficial use of its property, from August 1, 1985 to October 20, 1994.

Accordingly, the judgment of the Court of Claims of the State of New York (S. Michael Nadel, J.), entered on or about September 20, 2004, which, to the extent appealed from as limited by the briefs, awarded claimant simple interest at the rate of 11% on the value of the property on August 1, 1985, for the period from 1985 to 1994, and awarded it 9% interest on that amount for the period from 1994 to 2000, should be modified, on the law, so as to award claimant a money judgment representing a calculation of compound interest at the rate of 11% on $3,264,996, the value of the property on August 1, 1985, for the period from August 1, 1985 to October 20, 1994, and otherwise affirmed, without costs.

TOM, J.P., SULLIVAN, ELLERIN and NARDELLI, JJ., concur.

Judgment, Court of Claims of the State of New York, entered on or about September 20, 2004, modified, on the law, so as to award claimant a money judgment representing a calculation of compound interest at the rate of 11% on the value of the property on August 1, 1985, for the period from August 1, 1985 to October 20, 1994, and otherwise affirmed, without costs.