OPINION OF THE COURT
Abraham G. Gerges, J.
In this eminent domain proceeding, claimant Staten Island Land Corp. moves for an order directing the City of New York to satisfy the outstanding tax liens and tax lien certificates from the proceeds of the advance payment, with interest at the same rate accruing on said liens and certificates.
Facts and Procedural Background
On November 3, 2006, the City acquired title to the subject property (block 3551, lots 8, 14, 56). Prior to the taking, commencing in 2001, claimant fell into arrears in its payment of taxes and as a result, tax liens and tax lien certificates were sold by the City. As of the date that the motion was submitted, no advance payment has been made.
The Parties’ Contentions
Claimant
Claimant argues that under the circumstances of this case, the court should order the City to pay interest on the amount of the outstanding tax liens at the rate accruing thereon, or 18%.[1] More specifically, claimant argues that although the City took title to the subject properties on November 3, 2006, it has yet to make an advance payment. Since claimant is unable to satisfy the outstanding taxes by utilizing the advance payment, interest continues to accrue on the arrears at the rate of 18%. In contrast, the City will only pay interest on the advance payment at the statutory rate of 6%.
Claimant therefore concludes that this disparity in the interest rate being paid on the advance payment and the interest *290 rate being charged on the tax liens results in it being deprived of just compensation for the properties. Claimant further avers that this situation creates a clear incentive for the City to delay making the advance payment, since it is only paying 6% interest to claimant, but is charging 18% on the tax liens.[2] Claimant contends that this inequity can be corrected by equalizing the interest rate paid on the advance payment and charged on the tax liens. Claimant also avers that the City does not make advance payments on the date of vesting in all Staten Island condemnation cases.
The City
In opposition, the City argues that General Municipal Law § 3-a (2) provides that “[t]he rate of interest to be paid upon any judgment or accrued claim against the municipal corporation arising out of condemnation proceedings or action to recover damages for wrongful death shall not exceed six per centum per annum.” The City further asserts that this statutory interest rate is entitled to a presumption of validity and is to be adhered to unless a claimant introduces evidence which establishes that the rate is unreasonable and therefore violates claimant’s fundamental right to just compensation. The City contends that claimant herein has not met this burden.
Claimant’s Reply
In reply, claimant contends that the City ignores its argument that it is being denied just compensation by the City’s action in having refused to make an advance payment contemporaneously with the taking of the property, which resulted in claimant not having the funds to pay the back taxes, nor the ability to sell or mortgage the property to acquire the funds. In this regard, claimant asserts that it is the City’s delay in making the advance payment that is causing its inability to pay the tax arrears. More specifically, claimant argues that if the property had been sold to a third party, the tax arrears would have been satisfied at the closing; since the City took title in eminent domain, this was not the case. Claimant accordingly concludes that it would be inequitable to apply a market rate analysis to this case.
*291 The Law
It is well settled that “[w]hen the State takes property by eminent domain, the Constitution requires that it compensate the owner ‘so that he may be put in the same relative position, insofar as . . . possible, as if the taking had not occurred’ ” (Matter of City of New York [Kaiser Woodcraft Corp.], 11 NY3d 353, 359 [2008], rearg denied 11 NY3d 903 [2009], quoting City of Buffalo v Clement Co., 28 NY2d 241, 258 [1971], rearg denied 29 NY2d 640, 649 [1971]; accord Rose v State of New York, 24 NY2d 80, 87 [1969] [in condemnation proceedings, the condemnee is being deprived of property which must be replaced as soon as possible so that he or she may be put in the same relative position as if the taking had not occurred]). “The Eminent Domain Procedure Law codifies the constitutional requirement that just compensation be paid to all persons whose property rights are acquired by eminent domain” (Matter of Village of Port Chester v Sorto, 14 AD3d 570, 571 [2005], citing EDPL 101, 520 E. 81st St. Assoc. v State of New York, 99 NY2d 43, 47 [2002], City of Buffalo, 28 NY2d at 258-261). Stated differently:
“The compensation to which the owner is entitled is the full and perfect equivalent of the property taken. Monongahela Navigation Co. v. United States, 148 U.S. 312, 327. It rests on equitable principles and it means substantially that the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken. United States v. Rogers (C. C. A., Eighth Circuit), 257 Fed. 397, 400. He is entitled to the damages inflicted by the taking. Northern Pacific Ry. Co. v. North American Telegraph Co. (C. C. A., Eighth Circuit), 230 Fed. 347, 352, and cases there cited.” (Seaboard Air Line R. Co. v United States, 261 US 299, 304 [1923].)
Accordingly, an “ ‘owner is entitled to interest [on an award of just compensation] sufficient to ensure that he is placed in as good a position pecuniarily as he would have occupied if the payment had coincided with the appropriation’ ” (520 E. 81st St. Assoc. v State of New York, 19 AD3d 24, 29 [2005], appeal dismissed 5 NY3d 782 [2005], lv denied 5 NY3d 712 [2005], quoting Kirby Forest Industries, Inc. v United States, 467 US 1, 10 [1984]). “Interest is designed to compensate for the loss that results when a claimant is ‘deprived of the use of money to which he or she was entitled from the moment that liability was determined’ ” (Denio v State of New York, 7 NY3d 159, 167 [2006], quoting Love v State of New York, 78 NY2d 540, 545 *292 [1991]). “To ensure that a condemnee obtains just compensation, the [condemnor] is constitutionally required to pay prejudgment interest to compensate for delay in making payment and deprivation of use of the property” (Matter of Metropolitan Transp. Auth. v American Pen Corp., 94 NY2d 154, 158 [1999], citing Matter of City of New York [Brookfield Refrig. Corp.— Zoloto], 58 NY2d 532, 536-537 [1983]). “Interest on the value of the property taken is required by the just compensation clauses of the Federal and State Constitutions as a substitute for the beneficial use of the property during the period between the date of the taking and the date of final judgment” (Adventurers Whitestone Corp. v City of New York, 65 NY2d 83, 85 [1985]).
In addressing the issue of the rate of interest to be awarded, the Court of Appeals has explained that
“because the ascertainment of just compensation is a judicial question, the amount of interest to be paid as an additional component of such compensation is also a matter for judicial determination (Jacobs v United States, 290 US 13 [1933], supra; City of Buffalo v Clement Co., 28 NY2d 241 [1971], supra). The Legislature may fix a fair or prima facie measure of the proper interest rate in the first instance, and it has done so in section 3-a of the General Municipal Law, but while that legislatively fixed rate is presumptively reasonable, it is not determinative of the issue. The claimant may introduce relevant evidence of prevailing market rates to rebut the statutory presumption of reasonableness and demonstrate that some higher rate must be paid to afford him just compensation.” (Matter of City of New York, 58 NY2d at 537; accord Metropolitan Transp. Auth., 94 NY2d at 158 [the amount of interest necessary to bring the payment into accord with the constitutional requirement is a judicial question, although the interest rate fixed by the Legislature will be deemed presumptively reasonable]; Adventurers Whitestone Corp., 65 NY2d at 85 [interest is payable at the rate fixed by statute, unless it is established in the condemnation proceeding that as compared to the prevailing market rate the statutory rate is unreasonable]; City of Buffalo, 28 NY2d at 266 [it has consistently been held that the statutory rate of interest is presumptively reasonable and in the absence of proof that some other legal rate must be *293 paid to afford just compensation, the legal rate as it existed during the period elapsed satisfies the constitutional requirement].)
It must also be recognized, however, that since the ascertainment of just compensation is a judicial question, the specific provision in section 3-a of the General Municipal Law does not foreclose consideration of claimant’s contentions as to what constitutes just compensation (see e.g. Matter of City of New York, 15 AD2d 153, 179 [1961], affd 12 NY2d 1086 [1963]). Further:
“The appropriate interest rate is not measured by particular fluctuations in categories of interest rates for public or private securities or lending. So long as the statutory rate constitutes a judicially acceptable, fair return for the deprivation of the use of that property or the money equivalent of that use, either or in combination, the statutory rate should be considered proper.” (Matter of County of Nassau [Eveandra Enters.], 42 NY2d 849, 850-851 [1977], appeal dismissed 434 US 804 [1977].)
As is also relevant herein, the Court of Appeals has recently held that
“[t]he exercise of eminent domain does not reduce the interest on a tax lien (see Matter of City of New York [Hammel Boardwalk Corp.], 288 NY 51, 57 [1942]). In Hammel, we stated,
“ ‘Although the tax statutes recognize that the city may take property by eminent domain, there is no provision for the cessation of interest upon the happening of any such event. On the contrary, reduction of interest upon any taxes, assessments and water rents below the amount fixed by law is forbidden (Administrative Code, § 415 [l]-8.0, p. 217), and all taxes, assessments and water rents and interest thereon constitute liens until paid (Administrative Code, § 415 [l]-7.0, p. 217)’ (id.) see also Matter of Bradhurst Urban Renewal Area [Stage 1 ], 40 AD3d 218, 219 [1st Dept 2007]).” (Matter of Mill Cr. Phase 1 Staten Is. Bluebell Sys., 10 NY3d 898, 900 [2008] [footnote omitted].)
Similarly, in Matter of Bradhurst Urban Renewal Area (Stage 1) (40 AD3d at 219), it was held that there is no authority to reduce the interest rates on the tax liens held by the lienor trusts on the property from 18% to 6% since the applicable interest rate is mandated by statute (Administrative Code of City of NY § 11- *294 224) and continues to run even after property is taken by the City by the power of eminent domain.
Discussion
Applying the above general principles of law to the facts of this case, the court finds that claimant fails to establish that the statutory rate of interest provided pursuant to General Municipal Law § 3-a (2) does not provide a fair return for the deprivation of the use of its property or the money equivalent of that use. In this regard, claimant offers no evidence whatsoever to establish that interest at the rate of 6% is unreasonable, particularly in view of prevailing interest rates in today’s economy. Further, claimant points to no authority that grants the court the discretion to increase or decrease an award of interest premised upon the interest rate payable on liens docketed against the subject property. Indeed, so doing would permit a claimant to inequitably shift the burden of high interest obligations, such as tax liens, to the City. Moreover, the court agrees with the City’s assertion that the holdings in Matter of Mill Cr. Phase 1 Staten Is. Bluebelt Sys. (10 NY3d 898 [2008]) and Matter of Bradhurst Urban Renewal Area (Stage 1) (40 AD3d at 219), which preclude the court from reducing the interest rate charged on a tax lien, similarly preclude the court from achieving the same result by ordering the City to pay interest on an advance payment at the same rate charged on a tax lien.
In so holding, however, the court recognizes that there is merit to claimant’s assertion that the City has a history of refusing to make advance payments available on the date of vesting as required pursuant to the EDPL and the New York City Administrative Code (see generally Matter of City of New York, 23 Misc 3d 1133[A], 2009 NY Slip Op 51066[U], *2 [2009]; Matter of New York City [Stapelton Branch Lib.], Sup Ct, Kings County, June 30, 2003, index No. 8822/02). In this regard, it must be recognized that EDPL 301 states that the policy of the law requires that “[t]he condemnor, at all stages prior to or subsequent to an acquisition by eminent domain of real property necessary for a proposed public project shall make every reasonable and expeditious effort to justly compensate persons for such real property by negotiation and agreement.” EDPL 303 provides that the condemnor shall establish an amount which it believes to be just compensation for the property and, *295 whenever practicable, make an offer of 100% of this amount to the condemnee prior to acquisition.[3]
Further, “[t]he property owner should be placed in a position where at the time title is divested he receives some moneys to enable him to do what is necessary to compensate him for his loss” (City of New Rochelle v Sigel, 65 Misc 2d 962, 965 [1970]). In this regard, it has been held that
“[i]t is necessary that the act which invades his ownership shall provide for a certain and definite and adequate source and manner of payment. (Sage v. City of Brooklyn, 89 N. Y. 189.) This necessity is vital and of the most essential character, since if unheeded or disregarded, it transforms the right of eminent domain into a legalized plunder of the citizen.” (Matter of Mayor of City of N.Y., 99 NY 569, 577 [1885].)
Similarly, it has been recognized that the requirements that all property owners are to be treated equally and are to receive 100% of the condemnor’s appraised value as an advance payment
“is an attempt to alleviate some of the injustice by providing the condemnee with the maximum funds possible during the early stages of a condemnation proceeding. To deny to him the full benefits of clearly expressed legislative intent upon unfounded grounds constitutes an attitude which is arbitrary and capricious and which exemplifies bureaucracy at its worst.” (Matter of Town of N Hempstead, 70 Misc 2d 350, 351 [1972].)
Thus, the requirements “are mandatory and seek to alleviate the hardship imposed on owners in financing the purchase, rental or replacement of the property taken by eminent domain” (Matter of County of Nassau, 87 Misc 2d 1004, 1005 [1976], citing Matter of Town of N. Hempstead, 70 Misc 2d 350 [1972]).
*296 Herein, the City’s failure to make an advance payment to claimant before the taking or contemporaneously therewith clearly violates EDPL 301 and 303, as well as the intent of the statutes. Moreover, the City cannot successfully argue that claimant did not sustain damage by reason of the City’s failure to make an advance payment, since interest on the tax lien continues to accrue at the rate of 18%, while interest on the advance payment accrues at only 6%. The City’s assertion that claimant could simply have paid the lien to avoid the accrual of additional interest ignores the fact that commencing as of the date that the City took title on November 3, 2006, claimant was deprived of its ownership interest so that it was unable to sell or mortgage the property in order to generate the funds needed to satisfy the tax arrears due and owing. Nor will the City be permitted to rely upon its own unjustified refusal to make an advance payment to argue that claimant should have been able to obtain the funds to satisfy the lien elsewhere, since had it done so, it still would have sustained damages to the extent that it was precluded from earning interest on or otherwise investing that money.
It is further noted that the court is afforded broad authority to fashion an award of damages that provides just compensation to a party whose property has been taken by eminent domain. Hence, for example, it has been held that an aggrieved property owner has a remedy where it would suffer severely diminished compensation because of acts by the condemning authority in decreasing the value of the property by reason of “condemnation blight,” i.e., a claimant may:
“introduce evidence of value prior to the onslaught of the ‘affirmative value-depressing acts’ (City of Buffalo v. Irish Paper Co., 31 A D 2d 470, 476) of the authority and compensation shall be based on the value of the property as it would have been at the time of the de jure taking, but for the debilitating threat of condemnation (see, also, City of Detroit v. Cassese, 376 Mich. 311, 317-318, supra; City of Cleveland v. Carcione, 118 Ohio App. 525; 4 Nichols, Eminent Domain [3d ed.], § 12.3151; Owen, Recovery for Enhancement and Blight in California, 20 Hastings L. J. [Univ. of Cal.] 622, 643-649 [Jan., 1969]). This, in turn, requires only that there be present some proof of affirmative acts causing a decrease in value and difficulty in arriving at a value using traditional methods (City of Buffalo v. Irish *297 Paper Co., 31 A D 2d 470, affd. 26 N Y 2d 869, supra).” (City of Buffalo, 28 NY2d at 258.)
In another case, it was held that just compensation required an award for the lost use of sale proceeds from the time of the taking and not an award that represented only the interim decline in the value of the property (520 E. 81st St. Assoc., 99 NY2d at 44).
“[F]or this purpose interest serves a somewhat different purpose than it does when applied to the amount of a judgment. ‘Interest in this context is not an award of prejudgment interest on a liquidated sum in the traditional sense, but is a measure of the rate of return on the property owner’s money had there been no delay in payment.’ ” (520 E. 81st St. Assoc. v State of New York, 19 AD3d at 27-28, quoting 520 E. 81st St. Assoc., 99 NY2d at 48, quoting Sintra, Inc. v City of Seattle, 131 Wash 2d 640, 656, 935 P2d 555, 563 [1997].)
In the later proceeding in that matter, 520 E. 81st St. Assoc. v State (19 AD3d at 25), the Appellate Division held that the nine-year delay in obtaining just compensation warranted an award of compound rather than simple interest to the aggrieved property owner, pointing out that in the context of the case, “the calculation of interest is simply a way to measure what the property owner would have earned on the money had there been no delay due to the taking” (520 E. 81st St. Assoc., 19 AD3d at 28), emphasizing that “the taking here did not follow the procedure contemplated by the EDPL, but rather was a surreptitious and unacknowledged regulatory taking resulting in an over nine-year delay in the property owner’s ability to freely market the property” (520 E. 81st St. Assoc., 19 AD3d at 29).
Further, in Matter of City of New York (Ellis St.) (Sup Ct, Kings County, Jan. 20, 2008, index No. 2561/91), this court tolled the accrual of interest for approximately 10 years to compensate the City for claimant’s failure to move the action forward during that period.
The court accordingly concludes that inasmuch as it has discretion to compensate a party for a delay in taking property and/or to craft an award of just compensation that addresses the fact specific nature of the damage sustained, it also has the authority to compensate a claimant for a delay in payment. The court will therefore entertain claimant’s demand for the damage sustained by it in continuing to accrue interest on the tax liens at the rate of 18% after the taking as a result of.the City’s *298 refusal to make a timely advance payment as a component of the damages to be awarded to it as just compensation.
Conclusion
Accordingly, for the above-stated reasons, claimant’s motion is denied with leave to renew as a demand for damages at trial.

. Neither party advises the court of the amount of the liens.

. Although claimant offers no proof that the City continues to collect interest on a tax lien after it is sold, even if it does not, it is self evident that the higher the interest rate that can be collected on a tax lien, the easier it will be to sell.

. EDPL 303 provides that
“[t]he condemnor shall establish an amount which it believes to represent just compensation for the real property to be acquired. The condemnor shall make a written offer to acquire the property for one hundred per centum of the valuation so established. In no event shall such amount be less than the condemnor’s highest approved appraisal. Wherever practicable, the condemnor shall make the offer prior to acquiring the property and shall also wherever practicable, include within the offer an itemization of the total direct, the total severance or consequential damages and benefits as each may apply to the property.”